[No. 8774. Department One. May 27, 1910.]

NELLIE BUCKLES, *Respondent*, v. JOHN W. REYNOLDS, *Appellant*.[1]

APPEAL—REVIEW—HARMLESS ERROR—TRIAL—MISCONDUCT OF COUNSEL. In an action for wrongful death, the remark of plaintiff's counsel in his closing argument to the jury, that the only defense is the time-worn plea of contributory negligence which is always put forth in such cases, while unfair and not based upon the evidence, is not such a misstatement as to mislead the jury and require a new trial, especially where the court instructed that it was the duty of the jury to follow the rules of law laid down by the court.

WITNESSES—CROSS-EXAMINATION—DISCRETION. Where the defendant had testified as to the rate of speed he had been in the habit of running his automobile, it is discretionary for the trial court to allow cross-examination as to the speed he had run on a specified occasion, for the purpose of testing his accuracy of recollection.

PARTIES—DEFECT OF PARTIES—OBJECTION—DEMURRER. In an action by a widow for the death of her husband, error cannot be predicated upon the overruling of a general demurrer for want of sufficient facts, on the theory that it did not appear that she was the sole

[1]Reported in 108 Pac. 1072.

party in interest under Rem. & Bal. Code, § 183, authorizing an action by the widow and children of the deceased; inasmuch as, under Id., §§ 259, 261, the objection to defect of parties must be by special demurrer or answer.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered October 26, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

*Will H. Thompson*, for appellant.

*W. W. Langhorne* and *Hayden & Langhorne*, for respondent.

CHADWICK, J.—This was an action to recover damages for the death of respondent's husband, claimed to have been caused by the negligence of defendant in driving his automobile. The defense, after admitting the ownership of the machine, the collision, and death of plaintiff's husband, was a general denial and the affirmative defense of contributory negligence. The evidence is conflicting, and it is admitted that, upon the disputed questions of fact, we would be bound by the verdict of the jury but for the misconduct of counsel in making his closing argument to the jury. The theory of appellant is that an examination of the evidence will show that the defense of contributory negligence was so strongly maintained that, but for the argument of counsel made after the defense had closed and could not be heard further, and the neglect of the court to reprimand counsel or warn the jury so as to destroy the force of his intemperate remarks, the verdict could not have been otherwise than for the defendant. · Hence defendant is entitled to a new trial. The argument and ruling of the court complained of is as follows:

"(Attorney for respondent): In this case the plaintiff, Nellie Buckles, who is the widow of John W. Buckles, sued to recover the sum of $25,000 for damages she alleges she sustained by reason of the death of her husband. Now if

he was killed through the negligence of John W. Reynolds, then John W. Reynolds is responsible for any loss that she may have sustained through his death. If that accident or if the death of Buckles was caused by any act or if he did anything that proximately contributed to his own death, then under the law, as given by his honor on the bench, Nellie Buckles cannot recover in this case. Now, I don't dispute that proposition for an instant, but I do dispute, gentlemen, some of the conclusions that the learned counsel has drawn from the charge of the court as given you in this case and I do intend to dispute with all the energy I have got certain deductions he made from the evidence in this case. Whenever a man is sued for damages, whenever he is sued— if he ever occasioned loss to any one, whenever he is sued for damages by reason of occasioning the death of another, the old time-worn plea—

"Attorney for appellant, interrupting: I object to that; (continuing) that always is made—

"(Interrupting): I object to counsel making any such a statement as to what is done with the other cases. The Court: Exception noted. Proceed with the argument.

"(Continuing): Whenever a man is sued because of his act that occasioned the death of another the old time-worn plea is put forth, always has been put forth, always will be put forth, because the only plea that can be put forth is that the man that was killed was guilty of contributing—was guilty of negligence, he contributed to his own death. That is the only plea that can be put forth when a man is sued for damages. Now, what is contributory negligence that will bar a man or his legal representatives from recovering damages in an action of this kind."

That the argument was unfair and not based upon the evidence, but upon the pretended experience of counsel, and that the court should, in ruling upon the objection, have warned the jury to disregard the offensive remarks, may be admitted; but for this court to say, as a matter of law, that the jury, which we must presume was made up of men of fair intelligence, was misled thereby, would be to presume that the jury had disregarded all the evidence and followed the argument of counsel to the exclusion of all else, as well as the

instructions of the court. Few verdicts would be sustained if courts indulged the presumption that juries had been misled by the intemperate excesses of counsel in oral argument. We must rather indulge in hope, if not the presumption, that they will dispassionately consider remarks that are not sustained by the evidence; especially so when the court has instructed them, as he did in this case, that it was the duty of the jury to follow the rules of law laid down by the court. There is no fixed rule upon this question.

"We doubt not that many cases may arise in which the misconduct of counsel, in going outside of the evidence in his argument, may be such as to compel a reversal. No one can doubt the impropriety of such conduct. In doubtful cases it may be that which turns the scale, and determines the verdict. And a court, especially a trial court, should be exceedingly careful to restrain such misconduct, and punish the offender personally, and by setting aside every verdict which it has reason to believe has been affected thereby. But to hold that every such misconduct should be visited by a reversal of the judgment, would be unjustifiable rigor, and ofttimes doing as much or greater wrong than the misconduct itself. Who does not know that in the excitement of an argument there occasionally fall from the lips of counsel statements of matters not in evidence? Familiar with all the facts and history of the case, it is not strange that he sometimes refers to facts not proven. Should the client suffer by loss of his verdict, for every such offense of his counsel? Clearly there would be no justice in that. All that can safely be laid down is, that whenever in the exercise of a sound discretion it appears to the court that the jury may have been influenced as to their verdict by such extrinsic matters, however thoughtlessly or innocently uttered, or that the statements were made by counsel in a conscious and defiant disregard of his duty, then the verdict should be set aside. In this case the trial court overruled the motion to set aside the verdict. Doubtless it appeared to it that there was no intentional wrong, and that the matter was not of itself sufficient to have influenced the minds of the jury. . . ." *Winter v. Sass,* 19 Kan. 556, 566.

In *Chicago & A. R. Co. v. Johnson,* 116 Ill. 206, 4 N. E.

381, the remark that "for more than twenty years he had stood as an humble advocate of the people against monopolies such as this," was held to be culpably out of place, but not of itself sufficient to warrant a new trial. In *Henry v. Centralia & Chester R. Co.*, 121 Ill. 264, 12 N. E. 744, the remarks complained of were as follows:

"This railroad will benefit the public and each of us, if built. If you fix these damages too high, the company will not pay them, and the railroad will not be built. We will never get railroads if they have to pay such damages for right of way."

The court said:

"But it is not to be assumed that every mis-statement of law or of fact will have the effect of exciting improper prejudices. The instructions of the court and the good sense of a competent jury are a sufficient protection against ordinary errors of statement and false arguments of counsel."

In *Texas & Pac. R. Co. v. Raney* (Tex. Civ. App.), 23 S. W. 340, the court said:

"In his closing argument counsel for appellee used this language: 'The defendant is a corporation, that has neither soul nor feeling, and the only way you can reach it is through the pocket.' . . . While we do not approve of this language, and see nothing in the record to justify its use, yet it will not do to set aside verdicts for every extravagant remark made by counsel in the heat of argument. The jury must be presumed to be men of discretion, and when the trial judge, who is in the best position to decide, concludes they have not been improperly influenced by remarks of this kind, we will not overrule his judgment unless the record makes it appear reasonably probable that an erroneous result has been thereby produced. *Radford v. Lyon*, 65 Tex. 477."

In *Rangenier v. Seattle Elec. Co.*, 52 Wash. 401, 100 Pac. 842, counsel said of a witness:

"Gentlemen of the jury, I once occupied the position upon the bench now occupied by His Honor. I have known Dr. Willis for fifteen years. He has come before me as a witness. I would not believe him under oath."

This court said, after crediting the jury with the possession of ordinary common sense:

"The lawyer speaks for his client, and the jury, in recognition of this fact, presumably treats his argument from this viewpoint. Indeed, experience and observation teach that fairness of counsel in the presentation of a cause is usually more persuasive with the jury than is an effort to secure a verdict by means of intemperate speech."

Appellant testified on direct examination as to the rate of speed he had been in the habit of running his machine, fixing variously four, twelve to fifteen, and seven miles an hour. On cross-examination he was asked:

"Q. Now, what is there that attracted your attention and makes you remember the rate of speed you were going down Market street on that day and at that time? A. How is that? Q. What is it that recalls to your memory so that you can definitely fix the rate of speed you were going down Market street at that time? A. I had driven the car quite a lot—by the way the engine was running. Q. Now, do you remember an occasion of when you run your automobile in the public streets at a time when they were holding an automobile meet over there, or had an automobile race, the automobiles going into Olympia, that being the point of arrival? A. Yes, sir. Q. You remember running your automobile, running your automobile down the main street in Olympia on that day? Mr. Thompson: We object. It cannot have anything to do with this case. The Court: Objection overruled and exception allowed. Q. Now, Mr. Reynolds, how fast did you run your automobile down the main streets of Olympia that day? A. It has been so long ago I haven't thought about it. I would not know hardly how—perhaps 20 miles an hour. Q. What is your best recollection of that? A. 20 miles an hour. Q. Down the main streets of Olympia? A. Yes, sir, that is down pretty near to the Mitchell Hotel. Q. Don't you think it was a little faster than 20 miles, Mr. Reynolds? A. Well, no. Q. Don't you think it was nearer 40? A. No, sir. Q. It was 20 miles an hour, wasn't it? A. Yes, sir. Q. You know that was a rate prohibited by law, don't you? Mr. Thompson: I object. The Court: I think the objection should be sustained. This examination about the speed was

permitted to show his accuracy of recollection about speed; the objection is sustained. Q. You think you were not going down the streets of Chehalis on this day as fast as you went down the streets of Olympia at the time you speak of? A. No, sir. Q. You were not going that fast that day? A. No."

We think the testimony was proper, on the theory suggested by the trial judge, and when it became evident that counsel might go beyond a proper limit, the examination was promptly checked. A wide latitude is usually, and should be, given upon cross-examination, the extent of which must be governed largely by the discretion of the trial court. *Williams v. Spokane & N. R. Co.*, 42 Wash. 597, 84 Pac. 1129. Therefore, unless it seems most likely that prejudice resulted to the opposite party, courts should hesitate to control the discretion of the trial judge in matters of this kind.

It is contended that the court erred in overruling a demurrer to the complaint, in that it did not show that respondent had a sole interest in the recovery. Counsel relies upon section 183, Rem. & Bal. Code. We do not consider this question to be properly before us. The demurrer was a general demurrer; that is, that the complaint did not state facts sufficient to constitute a cause of action. It has been held, under sections 259, 261, Rem. & Bal. Code, that a demurrer in this form does not raise the question of defect of parties. *Birmingham v. Cheetham*, 19 Wash. 657, 54 Pac. 37. If the defect appears on the face of the complaint, the objection must be taken by demurrer. *Hale v. Crown Columbia Pulp and Paper Co.*, 56 Wash. 236, 105 Pac. 480. If it does not appear on the face of the complaint, such objection must be taken by answer. *First Nat. Bank v. Hamor*, 49 Fed. 45. And if not taken by either demurrer or answer, the objection cannot be urged on appeal. *Ralph v. Lomer*, 3 Wash. 401, 28 Pac. 760; *Hannegan v. Roth*, 12 Wash. 695, 44 Pac. 256; *Blumauer v. Clock*, 24 Wash. 596, 64 Pac. 844, 85 Am. St. 966; *Rothchild Bros. v. Mahoney*, 51 Wash. 633, 99 Pac. 1031.

Finding no reversible error in the record, the judgment of the lower court is affirmed.

RUDKIN, C. J., GOSE, MORRIS, and FULLERTON, JJ., concur.