[No. 8750.   Department One.   June 10, 1910.]

THE STATE OF WASHINGTON, *Respondent*, v.

ARTHUR W. GEORGE, *Appellant*.[1]

HOMICIDE—DEGREES—EVIDENCE—ADMISSIBILITY. In a prosecution for the murder of the accused's divorced wife, where evidence that the divorce was granted three years before on the ground of the husband's cruelty was admitted to show probable premeditation and a hostile mental attitude, it is error to refuse to allow the accused to rebut the same by proof of good will and apparent kindly feeling for a year previous to the homicide, in order to reduce the crime to the legal presumption of a lower degree.

EVIDENCE—OPINIONS—MENTAL ATTITUDE. The feeling or apparent mental attitude of people who are in frequent association may be shown by the opinions of acquaintances who had opportunity to observe and measure their emotions.

VENUE—LOCAL PREJUDICE—SHOWING. Upon a strong *prima facie* showing of local prejudice for a change of venue, the state should make a counter showing.

CRIMINAL LAW—TRIAL—MISCONDUCT OF COUNSEL. It is not misconduct of counsel requiring a new trial for counsel for the state in argument to the jury to state his opinion that the accused is guilty of murder in the first degree.

[1]Reported in 109 Pac. 114.

APPEAL—REVIEW—INSTRUCTIONS. Error cannot be predicated upon the refusal to give requested instructions covered in the general charge.

Appeal from a judgment of the superior court for King county, Yakey, J., entered November 23, 1909, upon a trial and conviction of murder in the first degree. Reversed.

*Thos. R. Horner* and *J. L. Waller*, for appellant.

*George F. Vanderveer* and *John F. Murphy*, for respondent.

CHADWICK, J.—Arthur W. George, appellant, shot and killed his wife, Elizabeth George, on the 13th day of May, 1909. He was later convicted by a jury of the crime of murder in the first degree, and brings this case to our court upon several assignments of error. We shall discuss only those having merit.

After appellant had committed the crime of which he was convicted, he had some negotiations with Fred H. Peterson, Esquire, a member of the Seattle bar, with reference to his defense. Mr. Peterson had been his attorney in a divorce suit in which a decree of divorce had been rendered nearly three years before. For reasons not now material, Mr. Peterson declined employment, and the present attorneys were appointed by the court to defend the prisoner. Upon the trial, after proving the *corpus delicti,* the state called Mr. Peterson as a witness "to show," as stated by counsel, "there was feeling existing between the people; and I desire to prove by Mr. Peterson that he called the attention of defendant at that time to the relation that existed; that is, that he had been warned to keep away from his divorced wife after the divorce was granted; and I want to prove that the divorce was granted, by the original findings of the court." Counsel for appellant admitted in open court that a divorce had been granted, but the court held that the fact that a decree had been rendered, and that appellant had a right to visit his children under that decree, could not be admitted but must

be proved by the record. He accordingly admitted a copy
of the decree, but rejected the findings of fact and conclu-
sions of law when offered. Mr. Peterson was then permitted
to testify that Mrs. George had objected to the frequency of
the appellant's visits, and that he had undertaken the role
of peacemaker, and had advised appellant to make his calls
upon his children less frequent, to which appellant assented,
agreeing to follow his advice "as near as he could."

Waiving the question of materiality and remoteness, it
would be hard to predicate error upon the admission of this
testimony if it were not for the subsequent rulings of the
court. That the decree was put in evidence to show feeling
or a hostile mental attitude on the part of the appellant,
there can be no doubt; but accepting it as properly before
the court, appellant would have the unquestionable right to
rebut the presumption arising from the decree of divorce by
any competent evidence. He endeavored to show by several
witnesses, neighbors and friends of his wife, that the rela-
tions existing between himself and wife up to the time of the
tragedy were amicable, and that there was, notwithstanding
the decree of divorce, a bond of sympathy and affection be-
tween them. This was denied him. The general tenor of
the evidence upon this point may be made manifest by quot-
ing from the testimony of some of the witnesses:

Mrs. Newberry:

"Q. State if you know whether the attitude of Arthur
George to Mrs. George and of Mrs. George to Arthur
George in your presence and at their home was that of
friendliness and kindness to each other or not. A. It was.
Q. Was it such an attitude and were the actions to each other
such as indicated they cared something for each other or
not? Mr. Murphy: I object as calling for a conclusion.
The Court: Sustain the objection. Mr. Horner: Save an
exception. Exception allowed."

Mrs. Smith:

"Q. During your intimacy with Mrs. George and your
acquaintance with Mr. George did you ever see any actions

or behavior on the part of Mr. George or of Mrs. George with the children that would indicate that there was any great affection existing between them? Mr. Murphy: I object to the question as calling for a conclusion. The Court: Sustain the objection. Mr. Horner: Save an exception. Exception allowed. Q. What loverlike action, if any, did you ever observe between Mr. and Mrs. George? Mr. Murphy: Same objection. The Court: Objection sustained. Exception allowed."

These witnesses and others had testified that appellant had spent every Sunday with his wife and children, meeting the children at Sunday school and taking them for a walk and afterwards remaining for dinner with the family. This is sufficient to show the attitude of the court towards the theory of the defense. Appellant was not only denied the privilege of showing that there was in fact no apparent ill feeling between him and his wife, but, when called as a witness in his own behalf, was interrogated on cross-examination by the state's attorney as to the grounds for the divorce; and it was made to appear to the jury that the divorce had, in fact, been granted upon the grounds of cruelty, the trial judge saying, over the objection of appellant, that it was proper to go into the grounds for the divorce, upon the cross-examination of appellant, to test his credibility as a witness.

If we could agree with the learned trial judge as to the grounds upon which this testimony was admitted, it might be that it would not be error. But the purpose—and it was not in any way concealed by the state—was to show that appellant had been cruel to the deceased, so that the jury might infer premeditation, deliberation, and malice. Clearly, appellant had a right to rebut this evidence. It requires no argument to show that, if the state could show ill feeling existing nearly three years before the tragedy, to show probable premeditation, thus raising the presumed crime from murder in the second degree to murder in the first degree, appellant should have the right to give evidence of good will

for a period of a year or more, to hold the crime to the legal presumption of second degree murder, or to reduce it to a lower degree. He was denied this privilege because, in the opinion of the trial judge, the questions asked called for the opinions of the witnesses. The feeling or apparent mental attitude of people who are in frequent association can be proved by the opinions of those whose acquaintance is of such character and duration as to give them an opportunity to observe and measure their emotions.

"In ordinary human dealings, the formation and expression of estimates as to another's mental state is constant and necessary. There is no good reason why testimony about it, based on personal observation of the other person's conduct, should not be admissible, so far as the opinion rule is concerned; for it is clearly impossible to remember and restate to the jury all the minute data of conduct and words which have served to convey the impression. Such was the orthodox common-law view; and such is the rule today perpetuated in most jurisdictions." 1 Greenleaf, Evidence (16th ed.), § 441h.

See, also, 2 Jones, Evidence, 362; 1 Wharton, Criminal Evidence, 511; Lawson, Ex. & Opinion Evidence, 520; *Blake v. People*, 73 N. Y. 586; *State v. James*, 31 S. C. 218, 9 S. E. 844; *Commonwealth v. Sturtivant*, 117 Mass. 122, 19 Am. Rep. 401; *Trelawney v. Colman*, 2 Stark. 191; *State v. Marsh*, 70 Vt. 288, 40 Atl. 836.

In *McKee v. Nelson*, 4 Cowen (N. Y.) 355, 15 Am. Dec. 384, a leading case, a question was put to a certain relative of plaintiff who had had an opportunity of observing her deportment, if in her opinion she was sincerely attached to defendant. The court said:

"We think the judge's decision founded in good sense, and in the nature of things. We do not see how the various facts upon which an opinion of the plaintiff's attachment must be grounded, are capable of specification, so as to leave it like ordinary facts, as a matter of inference to the jury. It is true, as a general rule, that witnesses are not allowed to give their opinions to a jury; but there are exceptions, and we

think this one of them. There are a thousand nameless things, indicating the existence and degree of the tender passion, which language cannot specify. The opinion of witnesses, on this subject, must be derived from a series of instances passing under their observation, which yet they could never detail to a jury."

In the *Marsh* case it was said:

"Such impressions upon the witness' mind, produced by observing appearances and acts, is more in the nature of a resultant fact than a mere judgment or opinion derived from an attempted description of the appearances and acts. Such description rarely can convey the full force of the impression made by his observation of them upon the mind of the witness."

Reference to the books will show that it is under the same rule that an opinion as to the intoxication of an individual may be received. Although not the exact case, the principle upon which the proffered testimony was offered was affirmed by this court in *State v. Dolan*, 17 Wash. 499, 50 Pac. 472. The same principle sustains the case of *Higgins v. Nethery*, 30 Wash. 239, 70 Pac. 489, wherein it was held that opinions as to the mental condition of a testator could be given, where the witnesses were acquainted with him in his lifetime and had means and opportunity to draw a just conclusion. There are cases holding to the contrary: *Leckey v. Bloser*, 24 Pa. St. 401; *State v. Brown*, 86 Iowa 121, 53 N. W. 92; and *Carney v. State*, 79 Ala. 14. In the last case the court admits the rule, but denies its application in the particular case. These cases are opposed to the overwhelming weight of authority, and, in our judgment, are unsound in principle.

It is also urged that the court erred in refusing a change of venue. A strong showing was made by the appellant in this behalf. We do not feel called upon to decide this point. There may have been a subsidence of the alleged hostile feeling toward appellant by this time. Inasmuch, however, as the showing seems to be *prima facie* sufficient, we feel warranted in suggesting that, in the event of a renewal of the

motion upon a new trial, if it be in King county, common prudence would dictate a counter showing on the part of the state.

Misconduct of court and counsel are also urged. The observations of the court which are the subject of complaint will, in all probability, not occur on a retrial; and the remark of counsel, "It is my sincere belief that defendant is guilty of murder in the first degree," made in argument to the jury, would not constitute reversible error under the authority of *Buckles v. Reynolds, ante* p. 485, 108 Pac. 1072.

Error is predicated upon the refusal of the court to give certain instructions. The subject-matter of the instructions refused was covered by other instructions, and appellant cannot complain.

Other errors assigned by counsel have become of no consequence in view of our holding. Judgment reversed, and the cause remanded for a new trial.

RUDKIN, C. J., GOSE, FULLERTON, and MORRIS, JJ., concur.