[No. 29820. Department Two. August 29, 1946.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS F. BAUERS, *Appellant*.[1]

[1]Reported in 172 P. (2d) 279.

*Henry Clay Agnew,* for appellant.

*Lloyd Shorett* and *Max R. Nicolai,* for respondent.

BEALS, C. J.—This is the second appeal in this cause, which was first before us on appeal by the state from an order of

the superior court granting a new trial. The order appealed from was reversed by this court, *State v. Bauers,* 23 Wn. (2d) 462, 161 P. (2d) 139.

Appellant was charged with the crime of murder in the first degree; his trial resulted in his conviction of the crime of murder in the second degree. From this judgment, and sentence thereon, he has appealed to this court.

Appellant's wife, Zona Bauers, died as the result of a wound inflicted upon her by a bullet discharged from a rifle in the hands of appellant, his sister also touching the gun. The charge was predicated upon the theory that appellant discharged the rifle with premeditated design to cause the death of his wife. Appellant claimed that the rifle was accidentally discharged while he was examining it and explaining its mechanism to his sister.

After receipt of the verdict, appellant moved for arrest of judgment or, in the alternative, for a new trial, basing the latter motion upon five of the statutory grounds, including error of law occurring at the trial and excepted to by appellant. The trial court denied the motion in arrest of judgment, but granted the motion for a new trial upon two grounds specifically set forth in the order. From this order, the state appealed. Appellant prosecuted no cross-appeal. This court held, *State v. Bauers, supra,* that the grounds stated by the trial court in the order granting a new trial were insufficient to support the order, and reversed the same, giving no directions covering further proceedings in the case.

After the cause had been remitted to the superior court, appellant's counsel objected to the entry of judgment and imposition of sentence until the trial court had passed upon the other grounds for a new trial upon which appellant's motion had been based, counsel contending that his motion for a new trial was still pending save as to the specific grounds upon which it had been granted.

After argument and discussion between the court and counsel, the following occurred:

"THE COURT: If there is any question about the motion for a new trial, it is denied. We considered the errors, and

the errors were argued before, and if you want a separate order I will sign one. Mr. Agnew: In what form, Your Honor? That is, will you give me recitals to the effect that you do it because you believe— The Court: (interposing) That the order did not pass upon the other errors which you are now urging. When we passed upon this matter I assumed, of course, that the order would mean that it was denied as to all grounds except to those stated granting the same, granting a new trial, because of certain specific things. That is the only thing we argued and considered."

Thereafter, the court entered the judgment and sentence from which this appeal is prosecuted.

Appellant assigns error upon the failure of the trial court " . . . to set forth in his order granting the motion for new trial his reasons for such ruling and in attempting to show such ruling by reference to an oral opinion."

Error is also assigned upon the admission of the testimony of a witness, appellant contending that the witness testified only to her conclusions.

In his third assignment of error, appellant contends that the trial court erred in permitting, over objection, certain witnesses to testify concerning statements made by the deceased in appellant's presence.

On this appeal, appellant contends that the judgment entered against him should be reversed with instructions to grant appellant a new trial.

Respondent moves to dismiss the appeal upon the ground that the questions now presented before this court by appellant were either specifically raised or could have been presented on the state's appeal from the order granting a new trial, State v. Bauers, supra, respondent contending that, under the doctrine of res judicata, all questions which appellant now seeks to argue before this court have been by this court, in fact or in law, determined against him by the decision on the prior appeal.

In the recent case of Larson v. Seattle, ante p. 291, 171 P. (2d) 212, this court, by an En Banc decision, considered State v. Bauers, supra, and directly overruled that case and the case of Grant v. Huschke, 70 Wash. 174, 126 Pac. 416, reaffirming the rule laid down in the case of

*Rochester v. Seattle, R. & S. R. Co.*, 75 Wash. 559, 135 Pac. 209, in which the court held that:

"Where, upon the consideration of a motion for a new trial, the trial court enters an order granting the motion upon a specific ground or for a specific reason stated, and the adverse party appeals, the party seeking to sustain the order may urge in this court all the grounds which were covered by his motion, and is not limited to the specific ground or reason upon which the trial court based the order."

In the *Rochester* case, the court continued by stating, "A second appeal will not be entertained."

In view of the fact that this court did not follow the rule above referred to in deciding the first appeal in the case at bar and has now overruled the opinion in that case in the particular referred to, we shall consider in this case those questions argued by appellant upon this second appeal in connection with the other grounds upon which appellant sought a new trial before the superior court.

■ The opinion of this court reversing the order of the superior court granting a new trial on appellant's motion simply reversed that order without any direction to the trial court to enter judgment upon the verdict of the jury. When the case again came before the trial court, appellant argued that his motion for a new trial upon grounds other than those upon which the order granting a new trial had been based was still before the court, the order granting a new trial having gone no farther than to grant the new trial upon the grounds specified therein. The superior court was then free to enter any order upon the motion for a new trial not inconsistent with the decision of this court reversing the order as incorrect upon the grounds specified therein. 3 Am. Jur. 729, Appeal and Error, § 1233; *Kolatch v. Rome & Sons,* 137 Wash. 268, 242 Pac. 38; *Godefroy v. Reilly,* 140 Wash. 650, 250 Pac. 59; *Rousseau v. Rosche,* 158 Wash. 310, 290 Pac. 806; *Stusser v. Gottstein,* 187 Wash. 660, 61 P. (2d) 149.

After argument, the trial court expressly denied the motion for a new trial.

This case is unusual in that, after the decision on the first appeal, this court overruled the opinion, in part, prior to submission here of the second appeal.

■ It must now be determined to what extent the decision of this court upon the first appeal settled the law of the case.

In the case of *Davis v. Davis,* 16 Wn. (2d) 607, 134 P. (2d) 467, we said:

"This court from its early days has been committed to the rule that questions determined on appeal or questions which might have been determined had they been presented, will not again be considered on a subsequent appeal in the same case. [Citing cases.]"

The principle was again recognized in the case of *Gray v. Wikstrom Motors,* 18 Wn. (2d) 795, 140 P. (2d) 497.

Relying upon several of the authorities cited, respondent, in support of the motion to dismiss this appeal, argues that the questions raised by appellant's assignments of error, presenting questions of law, or practice, either inhered in the previous appeal or could have been presented by a cross-appeal, or simply by argument.

Respondent's position is well taken as to appellant's first assignment of error, *supra.*

In our previous opinion in this case, we said:

"Although respondent suggests that reference to the court's oral decision will disclose that the order was made in the exercise of the court's discretionary power, we think the order is clearly one based upon specific grounds, the essence of which are: . . . Reference to the oral decision can add nothing to the order. [Citing cases.]"

As to the second and third assignments of error presented by appellant on this appeal, *supra,* based upon alleged erroneous rulings of the trial court in admitting evidence over appellant's objection, respondent contends that these matters either should have been presented on the first appeal, supported by a cross-appeal by appellant, or should have been argued upon the record as made; and that upon the present state of the record these questions are foreclosed by the prior opinion.

In 5 C. J. S. 1281, Appeal and Error, § 1826, is found the following text:

"A party who fails to urge assignments of error on a cross appeal, complaining of errors then existing, may be precluded from presenting those errors on a subsequent appeal.

"Where, on an appeal or review, a party fails to prosecute a cross appeal or to urge assignments of error which might have been effectively presented, he may be precluded from such prosecution or presentation on a subsequent appeal."

In *Allen v. Schweigert,* 113 Ga. 69, 38 S. E. 397, and *Chicago, I. & L. R. Co. v. Bloomington,* 182 Ind. 236, 105 N. E. 561, questions concerning the right of a party whose motion for a new trial had been granted to discuss on appeal reasons for granting the new trial other than those favorably considered by the trial court are discussed.

See, also, *Liberal Life Assur. Co. v. of Indiana v. Cook,* 66 Ind. App. 599, 118 N. E. 586; *Louisville v. River Excursion Co.,* 253 Ky. 95, 68 S. W. (2d) 792; and *Sun Co. v. Vinton Petroleum Co.,* 248 Fed. 623.

In *In re Skagit River Power Site,* 117 Wash. 368, 201 Pac. 300, it appeared that a judgment upon the verdict of a jury had been entered against the city in the sum of $27,500 for the taking of certain property. The city, contending, *inter alia,* that the verdict should not have exceeded $3,000, moved for a new trial, basing its motion upon three grounds: (1) excessive damages; (2) insufficiency of evidence; and (3) error of law. The superior court granted the city's motion upon the first ground, the order not referring to the other grounds upon which the city's motion was based.

On appeal by the property owner, the city cross-appealed, contending that it was entitled to a new trial upon all three grounds. The appellant moved to dismiss the cross-appeal, contending that the order granting a new trial being in favor of the city precluded any appeal on the city's part. This court denied a motion to dismiss the cross-appeal and affirmed the order granting a new trial on the ground upon which the order was based. In the course of the opinion, the court, after citations of authorities, said:

"The cases in this court just cited establish the doctrine that the practice of permitting a cross-appeal by a party in whose favor an order has been made granting a new trial *upon a less number of grounds* than were urged in the motion therefor is to sustain the order so as to save the necessity of further proceeding in the trial court or another appeal on the same record." (Italics ours.)

This court, in the case of *Fagerdahl v. North Coast Transp. Co.,* 175 Wash. 600, 28 P. (2d) 107, ruled to the contrary, but, upon rehearing before the court *En Banc,* the opinion cited was overruled, 178 Wash. 482, 35 P. (2d) 46. The case is not directly in point on the question now under discussion, but has some bearing thereon.

In the *Skagit River Power* case, this court held that a respondent in whose favor a new trial had been granted had the right to cross-appeal under the circumstances mentioned, but the court did not consider the question of whether or not, in order to present such a question, a cross-appeal was necessary. *Larson v. Seattle, supra,* clearly indicates that a cross-appeal is not necessary.

In the case now before us, the defendant (respondent on the first appeal by the state) had available to him without a cross-appeal an adequate method by which his rights could be preserved and of which method he availed himself.

In the *Skagit River Power* case, the city's motion for a new trial was based upon three different statutory grounds. The order was granted upon one only, and the question discussed by this court was whether or not a cross-appeal was necessary in order to bring before this court two different grounds upon which the motion for a new trial was based. The city (respondent on that appeal) was clearly an aggrieved party, as its motion for a new trial had been granted upon only one ground, instead of upon three.

Upon the first appeal in this case, the order granting a new trial was based upon Rem. Rev. Stat., § 2181 [P.P.C. § 136-1], subd. 5, "Error of law occurring at the trial and excepted to by the defendant."

The two assigned errors argued on this appeal as to the admissibility of certain evidence come within the same

category, "Errors of law occurring at the trial and excepted to by the defendant."

We are not now concerned with a situation in which the trial court has granted a new trial upon a less number of grounds than it was asked for, as in the *Skagit River Power* case, but with an order granting a new trial upon a specific statutory ground, and upon a particular specification within that ground, while the party moving for the new trial had contended that other errors of law coming within the same statutory ground also entitled him to a new trial. Had the order granting the new trial specified the particular grounds of error, it would have added nothing to the net result, namely, granting a new trial for error of law occurring at the trial to which exception had been taken.

Under these particular circumstances, a party whose motion for a new trial has been granted is not required upon appeal by the opposing party to cross-appeal, as he may before this court argue that the order is sustainable for any reason coming within the specific ground upon which the court granted the order. 2 Am. Jur. 945, Appeal and Error, § 153; 4 C. J. S. 359, Appeal and Error, § 183.

It is clear, then, that Bauers, not having cross-appealed on the former appeal of this action, was not precluded on that appeal from challenging the admissibility of the evidence on which he assigned error under the classification of error in law occurring at the trial. The manner in which that question was presented on the prior appeal becomes material, as the question might have become *res judicata*.

■ Appellant in the case at bar might well be barred from arguing these questions if they had been decided on the previous appeal, or might have been urged thereon, but were not presented.

It appears, however, that appellant in his brief in the case now before us on the previous appeal called attention to the alleged errors which occurred during the trial, referring to the appropriate pages of the statement of facts. These alleged errors are the same as those upon which appellant's assignments of error are now based.

From the recent opinion of this court in the case of

*Larson v. Seattle, supra,* whereby the previous decision of this court in *State v. Bauers, supra,* was in part overruled, it appears that this court, in determining the former appeal, was not limited to the specific errors described in the order granting a new trial, but could have considered all other grounds urged in support of that order. However, in the *Bauers* case, this court confined its consideration of the appeal to the specific errors mentioned in the order, and refused to consider any other grounds for a new trial.

On the first appeal, the appellant here fully complied with the rule laid down in *Fuller v. Friedman,* 135 Wash. 116; 237 Pac. 293, an *En Banc* decision, on rehearing of the case.

In the case cited, a Department of this court had dismissed an appeal by the defendants from an order granting a new trial on plaintiff's motion, a new trial having been granted on the ground that the court had erred in instructing the jury on one phase of the case. The defendants appealed, but brought before this court no statement of facts or bill of exceptions, arguing that, even though the instruction was incorrect, it was error without prejudice.

The plaintiffs had moved for a new trial upon several grounds, including inadequacy of the amount of damages allowed by the jury, but the new trial was granted upon the specific ground stated. The Department dismissed the appeal because of the absence of a statement of facts or bill of exceptions.

A rehearing having been granted, this court, sitting *En Banc,* held that the former opinion was wrong, and that:

"Where, upon the consideration of a motion for a new trial, the court enters an order granting the motion on one or more specific grounds less than the whole number covered by the motion, and the adverse party appeals, it shall be his duty to present on the appeal in a proper manner such portions of the record, including the facts, if any, full and complete, as shall be necessary for the consideration of the grounds or reasons against him as stated in the order granting the motion, and that while the respondent may urge on the appeal all grounds covered by his motion and will not be limited to the specific ground or grounds stated in the order,

the burden is on him to furnish in a proper manner such additional record, including the facts, if any, full and complete, as may be necessary for his purposes."

On the merits, the court found that the record was sufficient, and decided that the trial court had erred in granting a new trial, reversing that order with instructions to enter judgment on the verdict of the jury in favor of the plaintiff.

The other errors of law urged by Bauers upon his former appeal having been presented on the appeal but not considered by this court, the appellant now cannot be precluded from urging these errors on this appeal. *Gray v. Washington Water Power Co.*, 30 Wash. 154, 70 Pac. 255; *Hamilton v. Cadwell*, 195 Wash. 683, 81 P. (2d) 815; *Buob v. Feenaughty Machinery Co.*, 4 Wn. (2d) 276, 103 P. (2d) 325; *Junkin v. Anderson*, 21 Wn. (2d) 256, 150 P. (2d) 678.

For the reasons above stated, respondent's motion to dismiss this appeal is denied.

We shall now consider appellant's assignments of errors Nos. 2 and 3.

Pursuant to the first of these assignments, appellant argues that the trial court committed error in overruling his objection to the testimony of a witness to the effect that the deceased wife, Zona Bauers, was in fear of her husband, this appellant.

Mrs. Clifford Fuller, Zona Bauer's mother, called as a witness by the state, was interrogated at length concerning the relations between her daughter and appellant extending over some time prior to the daughter's death. The witness was asked by the prosecuting attorney, "How did the defendant and Zona Bauers get along in their married life?" To this question, appellant's counsel objected as calling for a conclusion of the witness, also for hearsay testimony. After many questions, much argument of counsel and the striking by the court of several answers of the witness, the following occurred:

"(Question [by the prosecuting attorney] read as follows: 'Do you know what your daughter Zona's state of mind was concerning the defendant during the last month of her life?') MR. KENNETT [continuing]: Mrs. Fuller, before

answering that, you are not permitted to state what your daughter said about it, but answer first: Do you know what her state of mind was? You can answer that yes or no. A. Yes. Q. All right. What was her state of mind as you observed it towards the defendant during the last month of her life? MR. AGNEW: The same objection [that the question called for a conclusion of the witness, and that the answer would be based on hearsay]. THE COURT: She may answer. A. She was in fear of him. MR. AGNEW: I move that the answer be stricken as a conclusion of the witness. Q. (By Mr. Kennett) She testified to the state of mind. THE COURT: I think I will let it stand."

The answer of the witness as to her daughter's state of mind applied to the period of a few weeks or a month prior to the daughter's death.

The trial judge was confronted with a very difficult situation. Certain testimony the witness might give would be admissible, and other testimony would be inadmissible, and several questions were asked and answered and the answers stricken by the court on motion on the ground that the answers were conclusions of the witness or based upon what the deceased daughter had told her mother.

It appears that the mother and daughter had been frequently together, and naturally appellant and his relations with his wife were frequently the subject of conversation between them. The witness was frequently warned not to repeat what her daughter had told her but to confine her answers to her daughter's state of mind toward appellant based upon knowledge gained by observation.

■ The general rule is that an opinion of a witness cannot be based upon admitted hearsay.

In *Webb v. Seattle,* 22 Wn. (2d) 596, 157 P. (2d) 312, we quoted the following language from *Johnson v. Caughren,* 55 Wash. 125, 104 Pac. 170:

" ' . . . a witness must testify to facts, not opinions; that whenever the question to be determined is to be inferred from particular facts which can be readily produced before the jury, and the inference to be drawn therefrom is within the common experience of men in general, requiring no special knowledge, skill or training, the inference or conclusion is to be drawn by the jury and not the witness. ' "

■ The exception to this rule was stated in the case of *State v. George,* 58 Wash. 681, 109 Pac. 114:

"The feeling or apparent mental attitude of people who are in frequent association can be proved by the opinions of those whose acquaintance is of such character and duration as to give them an opportunity to observe and measure their emotions."

In the case last cited, this court quoted from 1 Greenleaf, Evidence (16th ed.), § 441h, as follows:

" 'In ordinary human dealings, the formation and expression of estimates as to another's mental state is constant and necessary. There is no good reason why testimony about it, based on personal observation of the other person's conduct, should not be admissible, so far as the opinion rule is concerned; for it is clearly impossible to remember and restate to the jury all the minute data of conduct and words which have served to convey the impression. Such was the orthodox common-law view; and such is the rule today perpetuated in most jurisdictions.' "

The same matter is discussed in 3 Jones, Commentaries on Evidence, 2299, § 1249; and in 20 Am. Jur. 692, Evidence, § 823.

In 32 C. J. S. 188, Evidence, § 510, it is stated that in many cases the testimony of a witness as to the mental state of another deduced from observation has been received, while, on the other hand, such testimony will not be received where the inference is one which is conceived, rather than perceived.

The question is also discussed in 69 A. L. R. 1168, annotation; 2 Wharton's Criminal Evidence (11th ed.) 1770, § 1013; and in 6 Wigmore on Evidence (3d ed.), § 1715.

The facts which have been considered by courts and the propositions discussed by various text writers present an infinite variety, and the authorities are not in accord.

■ Appellant's second assignment of error is not well taken.

It appears from the evidence that appellant and Zona spent the night of May 13, 1944, at the home of her mother, who testified that appellant, his wife, and their two-year-old babe were in her kitchen on the morning of May 14th;

that Zona then, in the presence of appellant, the witness, and two police officers, described certain occurrences between her and appellant on the previous night. The following then occurred:

"MR. KENNETT: Confine your testimony to what was said in the defendant's presence, and tell us what it was. A. He came into the kitchen and asked,—or rather told Zona to get ready to go out and see his mother. MR. KENNETT: Will you speak just a little louder? A. And she told him, 'I am not going any place with you, Tommy, after you threatened to kill me all night.' Q. What did he do or say? A. He said, 'Well, the kid is going.' And he asked if he had finished his breakfast. Zona said, 'No.' Naturally, we tried to stall around, feeding the baby,—MR. AGNEW: I object to the conclusion of the witness. THE COURT: Overruled. A. He took the baby's clothes and put them around him. MR. KENNETT: Let me interrupt you a moment. Q. At the time she made the statement that he threatened to kill her all night, did he deny that statement? A. No. Q. What did he do? What was his,—I mean did he make any movement of any kind or say anything concerning it? A. Just shook his head."

On redirect examination of the witness, the following occurred:

"BY MR. KENNETT: Q. Now, Mrs. Fuller, I want to ask you now on how many occasions did Zona tell you that she was in deadly fear of the defendant? MR. AGNEW: Objected to as hearsay. THE COURT: Sustained. MR. KENNETT: May I be heard on it? THE COURT: I will hear you at 10:00 o'clock. MR. KENNETT: That is all, Mrs. Fuller. MR. AGNEW: That is all. THE COURT: I might as well change my ruling on that. Let's get rid of it. Call her back. Q. (By Mr. Kennett) The Court has stated you may answer the question. Will you read the question, Mr. Reporter? (Question read as follows: 'Q. Now, Mrs. Fuller, I want to ask you now on how many occasions did Zona tell you that she was in deadly fear of the defendant?) A. On several different occasions. Q. Over what period of time preceding her death? A. After Mother's Day until the time of her death. MR. KENNETT: That is all. MR. AGNEW: That is all."

Appellant being charged with murder and the evidence against him being circumstantial in its nature, the state of

mind of Zona Bauers at or not long before the time of her death, with particular reference to whether or not she was in fear of appellant, was significant and relevant. Under a well-recognized exception to the hearsay rule, her state of mind could have been shown by evidence of statements of Zona Bauers indicating her mental attitude. The rule is stated in 1 Wharton's Criminal Evidence (11th ed.) 365, § 285, as follows:

"Declaration of deceased, about the time of the homicide and so connected with it as to form a part of the transaction or to explain it, are relevant on the prosecution of the homicide charged."

The witness Mrs. Fuller could not testify as to her opinion of the state of mind of her daughter based upon what her daughter had told her, but she could testify concerning declarations on the part of the daughter to the effect that she was in fear of appellant.

Since Mrs. Fuller testified as above set forth, as well as to other matters admissible in evidence, we find no error available to appellant under his assignment above set forth.

The recent opinion of this court in the case of *State v. Robinson*, 24 Wn. (2d) 909, 167 P. (2d) 986, is not here in point, as the record contains competent evidence as to the state of mind of Zona Bauers in regard to her attitude towards her husband.

Pursuant to his third assignment of error, appellant argues that the trial court committed reversible error in overruling his objections to the testimony of three witnesses who testified as to statements made by Zona Bauers in the presence of appellant and the witnesses.

As above stated, Mrs. Fuller, the mother of Zona Bauers, testified that her daughter and appellant passed the night of May 13, 1944, at the home of her parents; that the following morning at breakfast Zona Bauers bore marks on her neck indicating that her neck had been compressed, and stated in the presence of appellant that during the previous night appellant had assaulted and threatened to kill her. When interrogated as to whether or not appellant denied this, the witness testified:

"Q. At the time she made the statement that he threatened to kill her all night, did he deny that statement? A. No. Q. What did he do? What was his,—I mean did he make any movement of any kind or say anything concerning it? A. Just shook his head."

The witness then testified that police officers were called to the house that morning because appellant insisted upon taking the two-year-old child of himself and Zona away with him, as he stated, to visit his mother; that Zona Bauers in the presence of appellant stated in the presence of officers Murray and Church

". . . that he had kept her in a locked room all night threatening to kill her, and the only way she managed to stay alive until the next morning was to promise him she would go with him the next morning, and they would go to the Aurora Bridge, and he would throw her and the baby off the bridge and he would jump himself."

Asked whether or not appellant denied that he had physically abused appellant and made the threats above referred to, the witness testified:

"Incidentally, I forgot to ask you, when Zona related to the police that the defendant had threatened to kill her the night before and how she persuaded him not to kill her, did he deny her statements? A. He did not. He simply shook his head as though she was silly. Q. Shook his head as though— A. She was silly. Q. As though she was silly? A. Yes."

The foregoing testimony was admitted over appellant's objection.

Upon cross-examination, the witness testified:

"Q. Now, when she was accusing him in front of you and the officers, as I understand it, on both occasions all he did was to shake his head back and forth? A. Huh, huh. Q. And act like she was silly? A. Yes. Q. In fact, he smiled about it, didn't he, as if there was just nothing to it? A. One-sided smile. Q. The shaking of his head was the negative shaking, as I am doing now to indicate a negative? A. You can shake your head 'no,' and you can shake your head as though something was too silly. Q. That was the way he did, to indicate that it was just too silly, in his opinion?

A. Yes. Q. And he did that when the police officers were there, also? A. Yes."

James W. Murray, police officer of the city of Seattle, testified:

"Q. Did Zona Bauers make any statement to you there in the presence of the defendant relating to threats by him against her life the night before? A. She did. Q. What did she tell you? MR. AGNEW: Objected to, your Honor, on the ground already stated, hearsay. I believe we have thoroughly argued it. THE COURT: He may answer. A. She said that the previous evening he had threatened her life and wanted her to jump off the Aurora Bridge; and he had done so on several different times—not jumped off the bridge, but had threatened her life on several times. Q. Did the defendant deny the accusations that his wife made, that he had threatened her life on several occasions? A. No, he did not. Q. Are you positive that these statements were made in the presence of the defendant and in his hearing, so that he heard them? A. I am."

On further cross-examination, the witness testified:

"BY MR. AGNEW: But you didn't ask him whether that was true or not? A. We did not. Q. And you didn't ask him whether or not it was true that—this accusation of threatening to kill his wife? A. No. Q. Or the accusation about making an agreement about going out and jumping off the Aurora Bridge? A. No. Q. You didn't ask him whether that was true or not? A. No."

Officer Von S. Church, while present, did not interrogate appellant, but testified that he heard Zona Bauers state that appellant had threatened her, and that appellant "had either asked her to go out to the bridge or had taken her out to the Aurora Bridge."

The witness also stated that there were some marks on the left side of her neck which she stated appellant had caused; and further testified as follows:

"Q. Did the defendant make any denials in your presence of the remarks that his wife made concerning his conduct towards her? A. No, he did not. Q. How did you finally leave the matter? A. Well, we,—Officer Murray and I sort of took it as a family argument, and we made Mr. Bauers, the defendant, we made him leave the place before we did

and leave the child in the custody of the mother and mother-in-law."

■   Appellant does not question the general rule that, when a statement is made in the presence and hearing of one who is later charged with the crime, the statement being accusatory or incriminating in character, and the statement is not denied by him, both the statement and the reactions thereto, if any, are admissible at the trial as evidence of the defendant's acquiescence in the truth of the statement. *State v. Redwine,* 23 Wn. (2d) 467, 161 P. (2d) 205.

In the case at bar, appellant was not under arrest at the time the statements were made.

Appellant, however, argues that, under the circumstances at the time the accusations were made by Zona Bauers in the presence of the police officers, there was no reason for appellant to contradict his wife's statements, and that in fact he did contradict them by negatively shaking his head.

Upon the record before us, the meaning of appellant's acts at the time of the conference was for the jury to determine.

The rule is stated in 2 Wharton's Criminal Evidence (11th ed.) 1093, § 657, as follows:

"Although the general rule is often stated to be that silence, standing mute, or failing to reply, in the face of an accusatory statement may be the basis of an inference of acquiescence therein, it is not necessary that the accused remain silent. *An evasive answer or one unresponsive to the declaration is tantamount to absolute silence and, when not amounting to a denial or an express admission, renders admissible both the statement and the reply under the rule as to tacit admissions.*" (Italics ours.)

As at the time appellant was neither under arrest nor under any restraint whatsoever on the part of the police officers, the evidence was properly admitted, and it was for the jury to determine whether or not the statements made in his presence called for an express denial on the part of appellant or any other or further acts or statements on his part.

The record is free from error, and the judgment appealed from is affirmed.

BLAKE, ROBINSON, and JEFFERS, JJ., concur.

SIMPSON, J., concurs in the result.

[1]Reported in 172 P. (2d) 210.