[No. 30809. *En Banc.* June 24, 1949.]

THE STATE OF WASHINGTON, *Respondent*, v. SYLVAN BOGGS, *Appellant.*[1]

[1]Reported in 207 P. (2d) 743.

922

*Lester T. Parker* and *R. J. Boryer,* for appellant.

*Charles B. Welsh, John T. Welsh, the Attorney General,* and *Russell F. Stark, Special Assistant,* for respondent.

SIMPSON, J.—The information in this case charges the defendant with the crime of murder in the first degree. The

defendant entered a plea of not guilty. The trial resulted in a verdict of guilty. The court then sentenced the defendant in accordance with the verdict of the jury.

On this appeal, the defendant has made sixteen assignments of error, which relate to (a) the introduction of evidence; (b) the examination of certain witnesses; (c) the giving of instructions; (d) the refusal to give requested instructions; (e) refusal to grant a mistrial; and (f) in denying a motion for a new trial.

The evidence, though conflicting, was sufficient to justify the jury in returning a verdict of guilty. We now summarize certain parts of the evidence. Other portions of the evidence will be set out later which bear upon particular issues.

The crime was committed July 3, 1948, at the home of the deceased, Everett Kiser. Appellant, Sylvan Boggs, was a bachelor, forty-six years of age, and the brother-in-law of Everett Kiser, at whose home he had lived for some time. Kiser was killed by a bullet fired from a thirty-thirty rifle. The shooting occurred at approximately nine o'clock p. m. Just prior to the incident, Mr. and Mrs. Kiser were visiting in their home with Mr. and Mrs. J. C. Gardner. A dog began to bark, and Mr. Kiser went outside the house. He had not been gone very long until a gunshot was heard. Mr. Gardner then went outside and found Kiser lying on the ground, and appellant standing about thirty feet away. Appellant was armed with a rifle, and when asked by Mr. Gardner what he meant by shooting Mr. Kiser, answered, "I told him, the God damn son of a bitch I was going to kill him and I have done it." Other evidence was introduced which corroborated that given by the witness Gardner.

Dr. J. P. Proffitt, a practicing physician of Raymond, Washington, performed an autopsy on the body of Mr. Kiser. He testified that death was caused by a bullet severing the descending aorta. His testimony showed that the bullet entered about two inches from the elbow and went from there on through Mr. Kiser's body.

The crime committed may properly be charged to that enemy of mankind, John Barleycorn. Kiser and appellant were hard-drinking men. They drank liquor at home and in taverns. When they drank, they quarreled. At Christmastime, Kiser had threatened to choke appellant "to death." Kiser, on occasions, beat his wife, the sister of appellant. On June 26th, just preceding Kiser's death, he and appellant had a fight. On the morning of that day, appellant had made a trip to Raymond, about two miles away, and came home shortly after noon. As he started to go into the Kiser house, he was met by Kiser, and an argument ensued. Kiser struck appellant in the face, bloodied his nose, broke his teeth, and knocked him to the ground. That night, appellant slept in a barn on the Kiser place. The next week, appellant slept in a shack that was formerly a smokehouse which belonged to Farrell Killen. Kiser threatened on several occasions to kill appellant.

The first error assigned relates to plaintiff's exhibit G, a photograph of the place where Kiser is supposed to have fallen at the time he was shot. Appellant's counsel claim that the photograph was posed and, therefore, inadmissible. The photograph shows the side of the Kiser house and a small portion of the yard, and gives a view of some trees just beyond the house. On the ground is shown a white handkerchief, which was put there to indicate the location of Mr. Kiser's body. Appellant argues that the position of the body was important. He calls attention to Dr. Proffitt's evidence, and contends that it tended to prove self-defense, in that Kiser's right arm must have been raised in order for the bullet to enter the arm as it did. In addition, he calls attention to the fact that Kiser had threatened to kill appellant.

Our attention is called to *Fabbio v. Diesel Oil Sales Co.,* 1 Wn. (2d) 234, 95 P. (2d) 788, in which case this court upheld the trial court's ruling that a posed or illustrative photograph was inadmissible. An examination of that case discloses that this court determined that the admissibility was largely within the discretion of the trial court, and

its rulings will not be disturbed except for an abuse of discretion.

■ It is our conclusion that the trial court did not in this case abuse the discretion lodged within it. The position of the handkerchief did not in any way dispute the evidence given by the doctor, nor did it destroy, or even bear upon, the claimed self-defense. The parties, as testified to by Mr. Gardner, were fairly close together on the side of the house shown in the photograph, and the jury was able to fairly consider self-defense, regardless of the position of the body.

■ Appellant's second contention, under this assignment of error, is that the person who directed the placing of the handkerchief on the ground did not see the body in that position and, therefore, the photograph depicting the position of the body was hearsay, and because of this situation, the defense did not have a chance to cross-examine.

Peter Maloney, chief deputy sheriff of Pacific county, testified that he remained on the scene of the crime until the body was removed, and was present when the picture was taken. He stated that he indicated the place or the spot where the handkerchief should be placed as indicating the position of Mr. Kiser's body. That evidence was direct and not hearsay.

It is next contended that the court committed error in permitting plaintiff's identification C and identification J to go to the jury, for the reason that neither one of them were properly identified or admitted into evidence. Appellant argues that identifications C and J, though never received in evidence, were sent to the jury room and remained with the jury throughout its deliberations. Identification C was a bullet recovered from the clothing of the deceased. It bore every indication of having gone through Mr. Kiser's body. It is referred to in the evidence on eight different pages of the statement of facts. On four pages, it was the subject of identification and of the examination of a ballistics expert. It was offered in evidence by the state, as shown on another page. Another page contains the court's

denial of its admission in evidence. On still another page, we find that the court reserved its ruling. Again, we find when it was offered in evidence, the court did not indicate a ruling, except to say, "Objection noted."

Identification J was a thirty-thirty rifle which the state claimed was used by appellant when he shot Kiser. It was referred to on eight pages of the statement of facts. When it was first offered in evidence by the state, the court sustained an objection to its admission. When it was offered again, he reserved ruling, and, when it was offered a third time, he made no ruling, except to say that the objection was noted.

The record includes further reference to the exhibits. At the close of the state's case, the following occurred:

"Mr. Stark: Prior to the time the State rests on the prosecution I would like to inquire of the court if all of the State's identifications are now admitted? Mr. Parker: I think Mr. Addington is to be recalled for a few questions. The Court: This question can be answered, I think they are all in. Mr. Stark: 'A' on down to 'O' they are all admitted. The Court: The court would like the prosecuting attorney to examine the record to see that all the exhibits are in, but I think they are."

The certificate attached to the statement of facts, and signed by the trial court, states that:

"Plaintiff's exhibits A, B, C, D, E, F, G, H, I, J, K, L, M, N, and O, and Defendant's exhibits, 1, 2 and 3; hereto attached and by reference now made a part hereof, are all of the exhibits admitted upon the trial of said cause."

A supplemental transcript contains what purports to be minutes of the clerk of the court. These minutes state:

"Plaintiff's Identification C admitted over objection as Exhibit C.

"Plaintiff's Identification J admitted over objection as Exhibit J."

 It is evident that the clerk's transcript of his minutes may not be used to contradict or supplement the statement of facts.

"We find in a supplemental transcript filed by appellant certain extracts from the clerk's minutes which appear to be at variance with the statement of facts in regard to this matter. The statement of facts can not be contradicted by the filing of a transcript of the clerk's minutes. The statement of facts was certified as correct by the trial judge, and must be accepted as a true narration of what occurred." *State v. Miller,* 177 Wash. 442, 32 P. (2d) 535.

The portion of the court's certificate is at variance with the statements contained in the statement of facts, as we have set them out.

Counsel for respondent calls our attention to the cases of *State ex rel. Roberts v. Clifford,* 55 Wash. 440, 104 Pac. 631, and *State v. Susan,* 152 Wash. 365, 278 Pac. 149, which, they argue, hold that the certificate of the trial judge is controlling and proves that, in fact, the exhibits C and J were introduced in evidence. The cases do not so decide. The *Roberts* case simply holds that the trial court must be presumed to have known whether the statement of facts was accurate. The holding in the *Susan* case is indicated by the following excerpt:

"Counsel for the state contends that he did not use the words contained in the statement of facts, but this statement, as certified by the trial judge, is controlling, and we must accept the same as containing at least the substance of the statements made in the argument complained of."

In *Tremblay v. Nichols,* 187 Wash. 109, 59 P. (2d) 1123, this court held in effect that the trial court may make the certificate speak the truth, and by it show whether the record is complete, but the court cannot enlarge or supplement the record. We find the proper and accepted rule to be fairly stated in *Arnold v. Moss,* 27 Okla. 524, 112 Pac. 995:

"It is also urged that the verdict is not supported by the evidence, but this assignment cannot be reviewed; for, although the case-made contains a recital by way of averment that it contains all the evidence introduced at the trial, it is apparent from the case-made that it does not contain all the evidence, and that such recital is untrue. Throughout the trial various books or parts of books and

accounts were introduced in evidence. None of these have been embodied in the case-made. Where the record upon its face shows that it does not contain all the evidence, but that material books and accounts have been omitted therefrom, the record is the best evidence and will prevail over statements in the case-made and recitals in the certificate of the trial judge that it does contain all the evidence."

The record in this case shows, and there is no question of doubt about it, that the trial court made but one ruling concerning the admission in evidence of exhibits C and J. That ruling sustained objections made by the defense to their admission. We must hold that exhibits for admission C and J were not admitted in evidence.

The question squarely presented for our determination, then, is whether exhibits for identification whose introduction in evidence has been rejected by the court, may go to the jury room and be used by the jury during its deliberations.

The following statutes and rules are pertinent:

"Taking papers to jury-room. Upon retiring for deliberation, the jury may take with them the pleadings in the cause, and all papers which have been received as evidence on the trial (except depositions), or copies of such parts of public records or private documents given in evidence as ought not, in the opinion of the court, to be taken from the person having them in possession." Rem. Rev. Stat., § 351 [P.P.C. § 99-55].

This statute was superseded by Rem. Rev. Stat. (Sup.), § 308-9 [P.P.C. § 93-17], Rule IX:

"Papers allowed in jury room—Pleadings not to go.

"Upon retiring for deliberation, the jury may take with them all papers and exhibits which have been received as evidence on the trial, except depositions: *Provided,* That copies may be substituted for such parts of public records or private documents given in evidence as ought not, in the opinion of the court, to be taken from the person having them in possession. Pleadings shall not go to the jury room."

The last quoted section of the statute was adopted *in toto* as Rule 9 of the Rules of Pleading, Procedure, and Practice, 18 Wn. (2d) 39-a.

*State v. Burke*, 124 Wash. 632, 215 Pac. 31, while not directly in point, indicates the care this court has observed in seeing to it that only properly admitted exhibits are submitted for the consideration of a jury. In that case, certain exhibits had marks on them, and fine particles of dust were attached to some of them. The jury, during its deliberations, was supplied with a magnifying glass not an exhibit, that it might more carefully examine the exhibits. In reversing a verdict of guilty, this court stated:

"In 16 R. C. L., at page 299, it is said, speaking of experiments made by a jury after retiring to consider its verdict:

" 'If the effect of such an experiment is to put the jury in possession of evidence which should have been but was not offered on the trial, it is not permissible, but if the experiment involves merely a more critical examination of an exhibit than had been made of it in the court, there is no ground of objection. Where, in a criminal case, experiments by the jurors are made during their deliberations to ascertain facts material to the case, but not included in the evidence, this, in general, constitutes such misconduct as will vitiate their verdict.'

"And again, at page 304 of the same volume, it is said:

"This seems to be the generally accepted rule and none reception of any evidence by the jury in a criminal case outside of that produced at the trial, and whenever there is sufficient ground to suspect that the defendant has been prejudiced by the reception of such evidence, the verdict will be vitiated. It is always improper for a juror to discuss a cause which he is trying as a juror, or to receive any information about it except in open court and in the manner provided by the law.'

"This seems to be the generally accepted rule and none of the cases cited by the state hold to a contrary doctrine. By reason of this misconduct on the part of the jury, a new trial should have been granted."

That statement of the rule was followed in *State v. Simons*, 172 Wash. 438, 20 P. (2d) 844, and distinguished in *State v. Everson*, 166 Wash. 534, 7 P. (2d) 603, 80 A. L. R. 106.

The case of *State v. Lindeman*, 64 N. D. 518, 254 N. W. 276, 93 A. L. R. 1442, is of considerable aid in deciding the question before us. In that case, the defendant had been

convicted of the crime of engaging in the liquor traffic. During the trial, the state offered in evidence a cardboard paper box containing several bottles of intoxicating liquor. Each of the bottles was marked "State's Exhibit 7." An objection made by counsel for defendant to the introduction of the exhibits was sustained by the trial court. As in the case at bar, the bottles were not separated from the other exhibits, and were sent to the jury room. In passing upon the question presented, the North Dakota supreme court had this to say:

"The box with its contents, all marked as exhibits, was offered in evidence and an objection to the receipt of such box and exhibits in evidence was sustained by the court. This evidence being ruled out was just as much out of court as though it had never been offered and had never been in the possession of the prosecution. It is only evidence admitted by the trial judge that is evidence in the case in court and evidence ruled out by the trial judge is out of the case and out of the court."

The court then called attention to, and based its opinion very largely upon, our holding in the *Burke* case. The court also quoted from *Thomas v. State*, 13 Okla. Crim. 414, 164 Pac. 995, as follows:

" 'Where evidence introduced at the trial consists in part of the testimony of witnesses given at the preliminary examination and reduced to writing, and such evidence is attached to other written evidence of witnesses examined at the preliminary examination and not produced at the trial, and after retiring to deliberate upon its verdict the jury makes a demand for that portion of such evidence introduced at the trial, the court should see that such evidence is detached from that not introduced before permitting the jury to have it. Where this is not done, and the jury is permitted to have access to that evidence given at the preliminary examination not introduced at the trial, and such evidence is damaging to the defendant, the substantial rights of the defendant have not been properly safeguarded.' "

Thereafter, the court, in well-chosen words, held that a reversible error had been committed and reversed the judgment of the trial court.

*People v. Holcomb,* 370 Ill. 299, 18 N. E. (2d) 878, is another case dealing with the present problem. During the trial, in which defendant was convicted, the state offered five exhibits. These exhibits were never admitted in evidence, but were sent to the jury room and were retained by the jury during their deliberations. Following is the holding of the court:

"Where, as in this case, exhibits are not admitted in evidence, it is a well-established rule that it is error to permit the jury to take them to the jury room. (*DeWulf v. Dix,* 110 Iowa, 553, 81 N. W. 779; *La Bonty v. Lundgren,* 41 Neb. 312, 59 N. W. 904; *Rich v. Hayes,* 97 Me. 293, 54 Atl. 724; *In re Barney's Will,* 71 Vt. 217, 44 Atl. 75; 64 Corpus Juris, 1029, and cases cited.)"

The supreme court of Nebraska had a case similar to ours before it in *Roberts v. State,* 100 Neb. 199, 158 N. W. 930. The excerpt from the decision, as set out below, states the facts of the case and the court's conclusion.

"After the case had been submitted to the jury, and in the absence of the judge, and without his order or knowledge, the bailiff permitted some of the jurors to leave the jury-room, and go to the court-room, and there, with the help of the bailiff, they gathered exhibits including as it is alleged, 'a certain skull, a jaw-bone, the partial skeleton of a hand or some fingers, several shirts, a hat, cap, two or three pairs of trousers, a pair of shoes, belt, a post card, one photograph of the alleged place where the alleged body was supposed to have been found, one white dress and a skirt belonging to Mrs. Clayton, * * * one bed comforter, together with some alleged human hair, and a suit case, and a photograph purporting to be a family photograph of the Connett family,' of which some had been received in evidence, and some had not, and took them to the jury-room, and there discussed the bearing of these promiscuous articles upon the probability of guilt of the defendant. This transaction requires no discussion. It is universally held that such misconduct requires a reversal."

A case frequently cited is *McCoy v. State,* 78 Ga. 490, 3 S. E. 768. McCoy was charged with, and convicted of, murder. In passing upon the issues presented, the court had this to say:

"For the jury, without the knowledge or consent of the prisoner, and without leave of the court, to receive and keep in their room, whilst deliberating on the case, the gun with which the State contends the homicide was committed, and the coat worn by the deceased at his death and pierced with the fatal shot, is unwarranted by law."

The judge of the court of appeals in *Smith v. State,* 14 Ga. App. 610, 81 S. E. 817, held that physical objects, not formally tendered in evidence, sent out with the jury to be used by them as evidence in the consideration of the case constituted reversible error. The court was of the opinion that the introduction of unauthorized evidence is *prima facie* prejudicial to the losing party, and, although it is the duty of counsel to make timely objections to evidence tendered, the exercise of ordinary diligence does not require counsel to anticipate that physical objects referred to in the trial, but which have not been tendered in evidence, will be submitted by the court to the consideration of the jury.

In *Barrow v. State,* 15 Ga. App. 690, 84 S. E. 204, the court considered a case similar to the *McCoy* case, and in its opinion stated:

"Upon the point now under consideration the case of the plaintiff in error is stronger than *Smith's* case, because in *Smith's* case the court knew of, and in fact suggested, the sending of the physical objects which had been identified, and if counsel in that case had been more attentive he might have heard the remarks of the court and might have made objection. From the statement of facts in the present case, approved as true by the trial judge, it is inferable that the physical objects referred to were put in possession of the jury without the knowledge of either the court or the accused or his counsel.

"Though reluctant to set aside this verdict, supported by evidence and approved by the trial judge, the introduction of foreign matter before the jury is presumptively so prejudicial to that fair and impartial trial guaranteed by law that we are constrained to hold that the learned trial judge erred in overruling the motion for a new trial."

Accord: *Snow v. State,* 91 Tex. Crim. App. 1, 237 S. W. 563, 20 A. L. R. 1180.

 It is our conclusion that it is reversible error for a trial court to allow physical objects not admitted in evidence to go to the jury room. This rule is especially applicable here. The bullet and gun were the principal objects upon which the state relied for a conviction. The state contended that the bullet caused the death of Kiser; that it was fired from a gun in the hands of the appellant; and that the gun sent to the jury room was the one used by appellant. The court did not allow the objects to be admitted in evidence, and it was the duty of the court to see to it that they did not go to the jury room to be there considered, examined, and compared by the members of the jury.

The next assignment of error has to do with hearsay testimony related by witnesses. Appellant contends that these statements were erroneously admitted and that he was entitled to a mistrial. In order to indicate the basis of the objection and our holding, it is necessary to refer again to the testimony. While Mr. Gardner was on the witness stand, he stated: "I heard a shot fired and Mrs. Kiser hollered Lord God do something, somebody do something—." Appellant's counsel objected on the ground that the evidence was hearsay. The court did not rule upon the objection. A question was then asked about what Mrs. Kiser had said. The court overruled an objection based upon the ground that the testimony was hearsay. The following then occurred:

"Q. What was she saying? A. She hollered: 'Lord God somebody do something, Sylvan is shooting Everett to pieces.'"

After some argument, the court decided that the evidence was prejudicial. The court then instructed the jury to disregard the answer relative to what Mrs. Kiser had said.

The next episode concerned evidence given by Frank Dick, chief of police of the city of Raymond. Mr. Dick was, over the objection of appellant's counsel, allowed to testify that Mr. Kiser on June 26, 1948, asked for help and said

that he was having trouble with Sylvan Boggs. The record discloses the following testimony of Mr. Dick, and the court's ruling:

"Q. Counsel wants to know what Kiser told you. A. Mr. Kiser told me he was having trouble with Sylvan Boggs and that he had previous trouble leading up to this particular—

"Defendant objects for the reason that it is not responsive; what he might have told some one. Objection overruled."

After listening to arguments by counsel, the court permitted this evidence to be admitted:

"Q. Mr. Dick, on or about the 26th day of June 1948 at or about the hour of three P M did Everett Kiser tell you that Sylvan Boggs had threatened his life?

"Defendant objects to the testimony as incompetent irrelevant and immaterial, and hearsay. Objection overruled.

"Q. You may answer. Mr. Parker: Q. The defendant was not present when this statement was made? A. No sir. Q. That was June 26 1948? A. Yes sir. Mr. Stark: I am asking these questions. Q. Was that recorded on the police blotter? A. Yes sir. Mr. Parker: Objected to and move to strike as wholly immaterial and that the jury be instructed to disregard it. Mr. Stark: I will withdraw it."

At a later period of the trial, the court instructed the jury:

"Members of the Jury: The court has concluded at this time to instruct you entirely to disregard the testimony of the witness Frank Dick who appeared on the witness stand this morning. It is stricken from the record and you must not consider it, or any part of it, or permit the testimony in anywise to affect your deliberations in this case. Do you understand the Court, all of you.

"Reply: Yes.

"The Court: Does any member of the jury have any doubt that the effect of that testimony can be eradicated from his mind? (No Reply) The Court: The jurors have all answered it can be and will be eradicated from their minds. Jury: Yes."

Another witness, Mrs. Pratt, was called by the state and asked:

"Q. State whether or not Mrs. Kiser on the 5th day of July 1948 in the Willapa Hotel in Raymond Washington

stated to you that Sylvan Boggs had come to their home and destroyed a heretofore peaceful existence? Mr. Parker: Objected to as leading, also an attempt to impeach a witness on a matter which he had not gone into on direct examination. The Court: The materiality of the question is what is bothering the court, and if it is not material it is not rebuttal. You may answer. You may have your exception Mr. Parker, to the ruling of the court."

█ The questions asked, and the answers given by, Mrs. Pratt and Mr. Gardner were highly improper. Counsel for the state should not have asked the questions which he must have known would call for an answer that was purely hearsay, and not connected with the commission of the crime. The court was in error in allowing the answers to be given in the first instance.

Sometimes during a trial, inadmissible testimony is given inadvertently by witnesses. In such cases, the court may cure the error by instructing the jury to disregard the evidence. The situation is different in the present case. The questions were so framed that the answers must have included hearsay, and the court could not, by instructions, rectify the error. This is especially true of the statements attributed to Mrs. Kiser, the widow of the slain man.

█ Testimony given by the chief of police stands upon a different basis. His testimony simply indicated that Mr. Kiser was afraid of appellant, and wanted some assistance. This same question was presented in *State v. Bauers,* 25 Wn. (2d) 825, 172 P. (2d) 279. In that case, this court approved testimony that was entirely similar to the testimony of the chief of police in this case. The evidence given by Mr. Dick was admissible, hence the record does not disclose an error on the part of the trial court in so far as the appellant is concerned.

The last assignment of error has to do with the giving of certain instructions. The court's instructions Nos. 17 and 18 read as follows:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element

to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such purpose, motive or intent."

"In other words voluntary intoxication furnishes no excuse, justification or extenuation for a crime committed while under its influence, but if his mental condition at the time of the alleged criminal act is such that he was incapable of having any intent, his act is not a crime at all. If, therefore, there is any evidence in this case of voluntary intoxication of the defendant, such fact should be taken into consideration together with all the other facts established by the evidence, to determine the existence or non-existence of an intent, but you ought to use great caution not to give immunity to persons who commit crime when they are inflamed by intoxicating drink.

"You must discriminate between the conditions of mind merely excited by intoxicating drink and yet capable of forming a specific intent to take life, and such a prostration of the faculties as renders a man incapable of forming the intent, or of deliberation or premeditation. If an intoxicated person has the capacity to form an intent to take life, and conceives and executes such intent, it is no ground for reducing the degree of his crime that he was induced to conceive it by reason of his intoxication, or that he was induced to conceive it more suddenly by reason of his intoxication."

It is appellant's contention that instruction No. 18 bound the hands of the jury in so far as the defense of intoxication was concerned; that is to say, the jury was compelled to acquit or find appellant guilty of murder in the first or second degree.

This court has held on several occasions that it is prejudicial error to give instructions on a specific point which are irreconcilable. This rule has been announced in the following cases: *Hart v. Clapp*, 185 Wash. 362, 54 P. (2d) 1012; *Warren v. Hynes*, 4 Wn. (2d) 128, 102 P. (2d) 691.

Instruction No. 17, being in the words of the statute, was correct. Instruction No. 18, however, nullified the statement made in instruction No. 17. By instruction No. 18, the court took from the jury the consideration of the question whether appellant was so drunk that he could only be

guilty of manslaughter. This was prejudicially erroneous. The state argues that the error was not prejudicial, and cites *State v. Britton,* 27 Wn. (2d) 336, 178 P. (2d) 341, and *State v. Clayton,* 32 Wn. (2d) 571, 202 P. (2d) 922, to prove its point.

Of course, trivial, formal, or academic errors cannot be considered as prejudicial. In the case at bar, however, the error could not be so considered. The evidence that appellant was very drunk was established by several witnesses. This being the case, it was incumbent upon the court to submit to the jury proper instructions on the question of whether appellant was so far intoxicated that he could only be guilty of manslaughter. A portion of the court's instructions attempted to accomplish this purpose. However, instruction No. 18 effectually destroyed the court's evident intent to give full, complete, and proper instructions.

For the reasons set out in this opinion, the judgment is reversed, with instructions to grant appellant a new trial.

BEALS, ROBINSON, and SCHWELLENBACH, JJ., concur.

STEINERT and GRADY, JJ., concur in the result.

HILL, J. (dissenting)—I dissent. The majority bases its conclusion that the defendant should be granted a new trial on four grounds, and I will briefly state my position as to each of them:

(1) The majority holds that exhibits C and J should not have been permitted to go to the jury room. The trial judge's certificate stating that exhibits C and J were admitted in evidence should be conclusive on that point. In any event, they were both so clearly admissible that the appellant cannot claim prejudice by reason of the fact that they, together with the other exhibits, were in the jury room.

(2) The majority holds that the admission of a hearsay statement by the witness Gardner was so prejudicial that the trial court's subsequent instruction to disregard it could not remedy the error. I agree that the statement of the witness Gardner set out in the majority opinion should not have been admitted; but I see nothing so prejudicial

about it that the trial court's instruction to disregard it should not have rectified the error. The trial court, after telling the jury to disregard the statement, put the direct question to the jury:

"Now is there any member of the jury who thinks it will be impossible to put that entirely out of his mind. Is there any member of the jury who thinks he cannot do that?"

There was no reply to this question, and the only inference possible from the jury's failure to make any reply is that each member of the jury was of the opinion that it would be possible to disregard the objectionable statement.

(3) The majority holds that the admission of the testimony of Mrs. Pratt concerning a statement made to her by Mrs. Kiser, the widow of the man who had been killed, was erroneous and prejudicial. Mrs. Pratt was a rebuttal witness. The purpose of her testimony was not to prove the guilt of the appellant, but to impeach the testimony of Mrs. Kiser to the effect that her husband was a brute and frequently beat her. Mrs. Pratt's testimony that Mrs. Kiser had told her that the appellant came into their home and destroyed a theretofore peaceful existence, was admissible for the purpose of impeachment, and the trial judge gave an instruction limiting it to that purpose.

(4) The majority holds that the giving of instruction No. 18 was prejudicial error. That it was erroneous must be conceded; but, far from being prejudicial, it was extremely favorable to the appellant. The instruction read, in part:

"But if his mental condition at the time of the alleged criminal act is such that he was incapable of having any intent, his act is not a crime at all."

It opened for the appellant an avenue of escape, if the jury would accept his defense that his state of intoxication was such that he was incapable of having any intent. The appellant's argument on this point is that *no jury would acquit him*, but that, if the result would have been to make him guilty of manslaughter instead of entitling him to an acquittal, the jury might have been willing to find that

he was so intoxicated that he was incapable of having any intent. This is an ingenious argument, but it admits that all that has been said before about prejudicial error is window dressing, and amounts to no more than this, that a jury will not follow the court's instructions if it does not approve the result. I decline to make a judicial determination to that effect. Under the instruction given, if the jury had believed the appellant incapable of having any intent, he would now be a free man. I can see no conceivable prejudice and a very great advantage to him in such an instruction.

Being unable to agree with the majority on any of the four propositions on which the reversal is based, I am of the opinion that the judgment on the verdict should be affirmed.

JEFFERS, C. J., and MALLERY, J., concur with HILL, J.