[No. 46223. En Banc. January 31, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS
BOYD PARR, *Petitioner.*

*Francis Conklin, Special Public Defender,* for petitioner.

*Donald C. Brockett, Prosecuting Attorney,* and *Leroy C. Kinnie, Chief Deputy,* for respondent.

ROSELLINI, J.—Shortly after midnight on November 28, 1976, police officers were summoned to a rural address in Spokane County, where they found the petitioner standing in the driveway, crying "Help me! Help me!" When asked what the trouble was, he pointed toward the house and said, "Inside." They found there the body of a woman, lying in bed, with a bullet hole in her temple. An ashtray and a gun lay beside her, and a cigarette which she had evidently held in her hand or in her mouth at the moment of death was lying on her chest.

The defendant was in an extremely emotional state but he was able to tell the police his story, a story to which he adhered throughout his official interrogations and repeated at the trial. He said that he and the victim, who had lived with him for about 2 years, had returned home shortly before the shooting, which had occurred in the midst of an argument about her brother. The victim, who had already gone to bed, reached for the gun, the petitioner said, and he likewise grabbed for it. It went off, evidently while pointed in the direction of the victim's head. The petitioner manifested great distress at having killed "the one person in the world [he] loved," and testified at the trial that he had never intended to do so.

The jury found the petitioner guilty of second–degree murder, and the Court of Appeals affirmed. Two questions are raised on this petition for discretionary review. It is first urged that RCW 9A.32.050 and .060 are in violation of the equal protection clauses of the state and federal constitutions, the claim being that they give the prosecutor discretion to charge either second–degree murder or manslaughter and prove identical facts in either case. *State v. Wanrow,* 91 Wn.2d 301, 588 P.2d 1320 (1979), is cited.

■ Under RCW 9A.32.050, a homicide is murder in the second degree if the defendant caused the death while committing or attempting to commit any felony other than those enumerated in RCW 9A.32.030(1)(c). Assault in the second degree (defined in RCW 9A.36.020) is such a felony, and the trial court here instructed the jury that such an assault occurs when a person *knowingly* inflicts grievous bodily harm upon another.

The argument of the petitioner is that manslaughter in the first degree, as defined in RCW 9A.32.060, requires the same proof. RCW 9A.32.060(1)(a) declares that a person commits the crime of manslaughter in the first degree if he recklessly causes the death of another person. According to RCW 9A.08.010, recklessness occurs when a person knows of or disregards a substantial risk that a wrongful act may occur and his disregard of such risk is a gross deviation from the conduct of a reasonable man in the same situation.

The petitioner's argument equates knowledge of a risk with knowledge of the infliction of harm. There is a distinction between these two, which the petitioner evidently fails to perceive. A person who knows that he is inflicting grievous harm is aware that a result is being achieved; whereas one who knows of a substantial risk knows only that the forbidden result is likely to happen.

There is a significant difference in the state of mind involved in the two situations. Since the two crimes have different elements, there is no violation of equal protection requirements. *State v. Wanrow, supra.*

The petitioner's second contention has greater merit. It concerns the admission of certain rebuttal evidence offered to prove that the victim did not reach for the gun or threaten the petitioner; in other words, to rebut the claim that the shooting was accidental, occurring while the petitioner was attempting to defend himself.

For a period of time petitioner and the victim had lived with her brother. Over the petitioner's objection, the trial court permitted the brother to testify that on one occasion, 6 months earlier, he had been away for a weekend. On the morning after he returned the victim told him that she and the petitioner had had an argument; that she had gone to the bathroom; that the petitioner had come to the door and told her that he had a gun and to come out of the bathroom. She had told him that she wouldn't come out until he put the gun away. A little later, he said he had put the gun away. She came out of the bathroom and found him apologetic. She said she nevertheless was afraid of him. This witness was also permitted to testify that on other occasions, his sister had told him that she wanted to leave the petitioner, but that she was afraid of what he might do to her or the witness.

The court instructed the jury that the evidence was to be considered only as it bore on the state of mind of the victim, and that it was not to be taken as evidence of the truth of the facts about which the statements were made.

The objection is that this testimony was hearsay, that the statements of the victim could not be tested by cross–examination, that the petitioner was denied the right to confront the witnesses against him, and that no limiting instruction could cure the prejudicial effect of this testimony.

██ It has long been established in this jurisdiction that an exception is made to the rule excluding hearsay when the state of mind or intention of a person is in question, if the court finds that two circumstances concur: (1) if there is some degree of necessity to use out–of–court,

uncross–examined declarations, and (2) if there is circum-
stantial probability of the trustworthiness of the out–of–
court, uncross–examined declarations. *Raborn v. Hayton,*
34 Wn.2d 105, 208 P.2d 133 (1949), and cases cited therein.
As indicated in that case, if the circumstances do not
import trustworthiness, such evidence may be inadmissible
unless there is some other corroborating evidence. This
court has been mindful that evidence of this type may be
misused by the jury and is easily fabricated. In an effort to
curtail abuse, limiting instructions are usually required. See
the cases cited for this point in *Raborn v. Hayton, supra.*
Whether such instructions can be expected to accomplish
their purpose is a question open to debate. *See Shepard v.
United States,* 290 U.S. 96, 78 L. Ed. 196, 54 S. Ct. 22
(1933); *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d
476, 88 S. Ct. 1620 (1968); *People v. Hamilton,* 55 Cal. 2d
881, 362 P.2d 473, 13 Cal. Rptr. 649 (1961); and *United
States v. Brown,* 490 F.2d 758 (D.C. Cir. 1973).

The trustworthiness of the declarant, as well as that of
the witness who testifies to the declaration, is often difficult
to fathom. Nevertheless, because such evidence, where it is
relevant to an issue, has considerable probative value and
because it may be unobtainable except through the avenues
of hearsay, courts have generally approved its admission,
surrounding it with such safeguards as they are able to
provide and trusting in the exercise of a sound discretion
on the part of the trial courts.

The testimony that the victim had told the witness that
she feared the defendant was admissible under this excep-
tion, provided it was relevant and met the test of trustwor-
thiness. But the testimony concerning a threat and other
conduct of the petitioner was not properly admissible under
the rule and was highly prejudicial. While this court has, in
at least one case, approved the admission of similar testi-
mony, the weight of authority is against it, and the preju-
dicial effect of such evidence is generally recognized. The
subject is dealt with at length in many cases gathered in a
scholarly opinion by Judge MacKinnon in *United States v.*

*Brown, supra.* The conclusion of that opinion is stated at pages 773–74:

The rule then to be distilled from the better reasoned decisions is that a victim's extra–judicial declarations of fear of the defendant are admissible under the state of mind exception to the hearsay rule with a limiting instruction only if there is a manifest need for such evidence, *i. e.,* if it is relevant to a material issue in the case. Where there is a substantial likelihood of prejudice to the defendant's case in the admission of such testimony, it is inadmissible if it bears only a remote or artificial relationship to the legal or factual issues raised in the case. Even where there is substantial relevance, the additional factual matters in the statement may simply be too explosive to be contained by the limiting instruction, in which case exclusion of the testimony is also necessitated.

The United States Supreme Court, in *Shepard v. United States, supra,* considered a case in which the defendant was accused of murdering his wife by administering poison to her. The defense was suicide. A nurse was allowed to testify that more than 2 weeks before her death, the wife had stated, "Dr. Shepard has poisoned me." Holding this evidence improperly admitted, the court said that the declarations of deceased persons (short of dying declarations) which may be used to show their intentions for the future must be sharply distinguished from declarations of memory merely and from those that recite the past conduct of other persons.

There, the government had argued that the statement by the dying woman, if not admissible as a dying declaration, was admissible to show her state of mind—that she was not in a suicidal mood. Justice Cardozo, speaking for the court, said:

It will not do to say that the jury might accept the declarations for any light that they cast upon the existence of a vital urge, and reject them to the extent that they charged the death to some one else. Discrimination so subtle is a feat beyond the compass of ordinary minds.

The reverberating clang of those accusatory words would drown all weaker sounds.

*Shepard v. United States, supra* at 104.

In *Commonwealth v. DelValle,* 351 Mass. 489, 221 N.E.2d 922 (1966), a man had died as a result of a fall from an apartment window. Other occupants of the apartment were accused of having thrown or pushed him through the window, and in defense, they attributed the death to suicide. The lower court admitted testimony by two state's witnesses, who said that the victim had told them the defendants had threatened him with death. The Massachusetts court noted that the theory upon which hearsay is excluded is that, with the declarant absent, the trier of fact is forced to rely upon their memory, truthfulness, perception, and use of language, untested by cross–examination, citing Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 Harv. L. Rev. 177 (1948); C. McCormick, *Evidence* § 225 (2d ed. 1972); and 5 J. Wigmore, *Evidence* § 1362 (3d ed. 1940).

The proof of threats neither tended to prove nor to negate the existence of a suicidal intent, the court noted, and the true import of the testimony was to express the intent and purpose of the defendants, rather than the victim, the inevitable inference being that the defendants wanted to kill the victim, that they so stated, and they did kill him. The court observed that to hold admissible evidence of threats to a victim preceding a crime not witnessed by others would in effect permit the introduction of such declarations to prove their truth.

The California Supreme Court, on the other hand, has held that such hearsay statements are admissible for precisely the purpose of proving the defendant's intentions and conduct. *People v. Merkouris,* 52 Cal. 2d 672, 344 P.2d 1 (1959). It did so in that case, however, without recognizing the hearsay problem involved and without constructing a rational basis for its decision. The Massachusetts court, in *Commonwealth v. DelValle, supra,* noted that the

California Law Revision Commission had drafted a proposal to overrule legislatively the *Merkouris* decision and those cases following it which hold that a declarant's state of mind is relevant to prove the defendant's motivation and acts. That rejection of the *Merkouris* rule is now embodied in Cal. Evidence Code § 1250 (West), which permits evidence of a statement of a declarant's state of mind, emotion, or physical sensation at a time prior to the statement, if the evidence is offered to prove the state of mind, emotion, or physical sensation, when it is itself an issue in the action and the evidence is not offered to prove any other fact.

It is undoubtedly the rule that evidence of quarrels between the victim and the defendant preceding a crime, and evidence of threats by the defendant, are probative upon the question of the defendant's intent; and the respondent cites the following cases to illustrate this point: *State v. Gates,* 28 Wash. 689, 69 P. 385 (1902); *State v. Churchill,* 52 Wash. 210, 100 P. 309 (1909); *State v. Quinn,* 56 Wash. 295, 105 P. 818 (1909); *State v. Spangler,* 92 Wash. 636, 159 P. 810 (1916); *State v. Hoyer,* 105 Wash. 160, 177 P. 683 (1919); *State v. Hunter,* 183 Wash. 143, 48 P.2d 262 (1935); *State v. Davis,* 6 Wn.2d 696, 108 P.2d 641 (1940); *State v. Guerzon,* 23 Wn.2d 242, 160 P.2d 603 (1945); *State v. Americk,* 42 Wn.2d 504, 256 P.2d 278 (1953). In none of these cases does it appear that the threats or quarrels were proven by hearsay evidence. They illustrate the probative value of such facts and the prejudice which may result to the defendant if they are proven by the testimony of a person not in court, in which case there is no opportunity to explore the perceptions, motives and trustworthiness of the declarant or the circumstances surrounding the alleged quarrels or threats. It is for this reason that courts which have given serious thought to the question have generally held such testimony inadmissible to prove the intent or conduct of the defendant and have made it a practice to confine the jury's consideration of

"state of mind" evidence to the issue which makes that state of mind relevant.

In a homicide case, if there is no defense which brings into issue the state of mind of the deceased, evidence of fears or other emotions is ordinarily not relevant. But where a defense such as that of accident or self–defense is interposed, as is the case here, courts have generally allowed the admission of evidence of the victim's fears, as probative of the question whether that person would have been likely to do the acts claimed by the defendant. *See People v. Schindler,* 273 Cal. App. 2d 624, 640, 78 Cal. Rptr. 633 (1969) (permitting testimony that deceased had said that "the gun was missing from the closet and she was afraid her husband was going to kill her"); *People v. Atchley,* 53 Cal. 2d 160, 346 P.2d 764 (1961), *cert. denied,* 366 U.S. 207, 6 L. Ed. 2d 233, 81 S. Ct. 1051 (1961) (holding admissible a letter which a woman had purportedly written to a judge 2 days before her death, stating that her husband had threatened her and she feared him, where the defendant husband claimed she had threatened him); *People v. Finch,* 213 Cal. App. 2d 752, 29 Cal. Rptr. 420 (1963) (holding admissible a deceased wife's statements of fear of her husband and threats made by him, where he claimed that he was attempting to disarm her); *People v. Livingston,* 271 Cal. App. 2d 628, 77 Cal. Rptr. 53 (1969) (admitting statements of victim that defendant had been arguing with her and talking about shooting her). On the other hand, the California Supreme Court, in *People v. Hamilton,* 55 Cal. 2d 881, 362 P.2d 473, 13 Cal. Rptr. 649 (1961), held that it was prejudicial error to admit evidence that the deceased wife had, on many occasions, complained of threats made by the defendant and stated her fear of him. The court found that the circumstances under which the statements were made cast doubt upon their trustworthiness. The state of mind of the deceased was at issue in that case only because the defendant had claimed that the relations between the two had been friendly.

It will be seen that the California courts have allowed the prosecution to prove not merely statements of a victim about his own state of mind preceding a crime, but his statements about conduct of the defendant which incited that state of mind. We do not perceive the necessity of allowing hearsay testimony about conduct of the defendant to go to the jury. In the interest of protecting both the State's right to disprove accident or self-defense and the defendant's right to a fair trial, free of unnecessary and prejudicial evidence which is not subject to cross-examination, the trial court should allow the State to prove the victim's declarations about his or her own state of mind, where relevant, but should not permit it to introduce testimony which describes conduct or words of the defendant.[1]

Having reached this conclusion, we find it necessary to overrule, in part, two cases in which this court has permitted hearsay testimony of threats by the defendant against the deceased.

While we have not gone so far as to expressly condone the use of hearsay statements or threats by, or fears of, the defendant to prove his guilt, in one case which has come to our attention, testimony concerning fears of the deceased has been held admissible, without restrictions as to its use

---

[1]This is the import of Washington Rule of Evidence 803(a)(3), which became effective April 2, 1979:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(3) *Then Existing Mental, Emotional, or Physical Condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

It will be seen that this rule eliminates the requirements of necessity and circumstantial probability of the statement's trustworthiness. To offset that liberalization, there must be a restriction of the content of the statement which can be introduced, if the defendant's rights are to receive due protection. The rule permits statements reporting the declarant's state of mind, but does not permit statements reporting the conduct of another which might have induced that state of mind.

by the jury. In another, a witness was allowed to testify that the victim had told him he was threatened by the defendant. The first of these cases was *State v. Bauers,* 25 Wn.2d 825, 172 P.2d 279 (1946). This case was cited as authority by the California court in *Merkouris.* It was criticized by the District of Columbia Court of Appeals in *United States v. Brown,* 490 F.2d 758, 771 n.41 (D.C. Cir. 1973), the court noting that it had likewise been criticized in 22 Wash. L. Rev. 145 (1947).

The facts of *State v. Bauers, supra,* were that the defendant's wife had died from a bullet wound received when a rifle discharged while in the hands of the defendant. The defendant's sister also touched the gun; and it was his defense that the gun discharged accidentally while he was examining it and explaining it to his sister. This court found no error in the admission of testimony of the deceased's mother, giving her opinion that the victim had feared her husband. She was also allowed to testify about statements made by the daughter expressing that fear. As the critics point out, there was no issue involving the victim's state of mind, but this facet of the case escaped the attention of the court. The relevance of the testimony was assumed. The court's attention was focused upon qualifications of the mother as a witness, rather than upon the relevance of her testimony. The case, therefore, is slight authority for the proposition that testimony concerning the victim's state of mind at, or prior to, the time of the occurrence in question, is relevant to prove the acts of another person, namely the accused. To the extent that it may be so read, however, it is out of harmony with the principles governing the "state of mind" exception to the rule excluding hearsay and is hereby overruled.

The second of our cases touching upon this problem is *State v. Boggs,* 33 Wn.2d 921, 207 P.2d 743 (1949). The defendant in that case was the brother–in–law of the deceased, by whom his life had been threatened and at whose hands he had recently received a beating. He contended that he shot the victim in self–defense. Testimony

concerning relations between the two was given by several witnesses. While this court held some of that testimony to be hearsay and inadmissible, at the same time it approved testimony of a police officer, who said that the victim had told him he was having trouble with the defendant and the defendant had threatened his life. The evidence was held admissible upon the authority of *State v. Bauers, supra,* without any discussion of its relevance or competency.

Under the evidence in that case, the victim had himself threatened the life of the defendant, and his complaint to the police may well have been self–serving. But assuming the admissibility of the statement with respect to the fears entertained by the victim, we are of the opinion that we went too far in approving the testimony with respect to alleged threats, and to the extent that it holds such hearsay testimony admissible to prove either the state of mind of the deceased or conduct of the defendant, it is likewise overruled.

In the present case, the trial court was justified in finding the state of mind of the victim to be relevant, in view of the fact that the petitioner claimed that the killing was the result of an accident, occurring while he was attempting to defend himself. The state of mind of the victim had some bearing on the question whether she was likely to have reached for the gun. The trustworthiness of the testimony was open to some question, considering the relationships between the defendant, the victim, and the witness; but so far as the witness' own bias was concerned, such bias, if any, could be probed on cross–examination and/or proven by other competent evidence. There is no clear showing of abuse of discretion upon this point. The probative force of the evidence is also somewhat doubtful, since the fact that the victim feared the petitioner could motivate her to reach for the gun, in an effort to keep it away from the defendant. On the other hand, her fear could have motivated her not to do any act which might provoke the petitioner and cause him to resort to violence against her. It was within the province of the jury to determine what inference should be

drawn from this evidence, viewing it in the light of the other evidence in the case.

The testimony with respect to threatened violence by the defendant presents a different question. The prosecution made out a strong circumstantial case against the defendant. His defense depended largely upon his own credibility with the jury, and the circumstances did not clearly refute his story. The case being in this posture, any evidence tending to show that the defendant was a violent person— and the hearsay statements reported by the victim's brother were the only evidence in the record to that effect—was almost inevitably highly damaging to his defense. Evidence that he had threatened the victim with violence was even more damaging, as the prosecution freely admits. It was not necessary to let this evidence go to the jury, and we cannot believe that its prejudicial effect could have been alleviated by the instruction to consider it only for a limited purpose.

Fault can hardly be attributed to the trial court for permitting the prejudicial testimony with respect to threats, since it had the case of *State v. Boggs, supra,* before it. However, the admission of this evidence introduced an element of prejudice which, in the circumstances of this case, could result only in the denial of a fair trial.

The judgment of the Court of Appeals is reversed, and a new trial is ordered.

UTTER, C.J., and STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.