# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71559-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SCOTTYE LEON MILLER, a.k.a. | ) | |
| SCOTTYE MILLER MILLER, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 3, 2016 |

TRICKEY, A.C.J. — Scottye Miller appeals his conviction and exceptional sentence for first degree murder. He argues that the trial court erred by admitting hearsay testimony to establish the victim's state of mind, which Miller claims was irrelevant. Because Miller's account of the victim's conduct put her state of mind at issue, we disagree. But we agree with Miller that the trial court improperly admitted hearsay statements describing Miller's conduct. Nevertheless, we affirm Miller's conviction because any evidentiary errors were harmless. And, we affirm the trial court's imposition of an exceptional sentence on the basis that Miller committed the offense shortly after being released from incarceration.

## FACTS

Miller and Tricia Patricelli dated for about four years. Miller was abusive throughout the relationship. In October 2012, Miller came to stay with Patricelli and her daughters. Patricelli and Miller's mutual friend, Rayford "June" Varnado, also lived there temporarily and slept on her couch.

On October 27, 2012, after an argument the night before, Patricelli texted Miller and told him not to stay with her. The next day Miller texted his mother that

he was going to kill Patricelli.

On October 29, 2012, without Patricelli's knowledge, Miller slept in a closet on Patricelli's balcony. Miller sent Patricelli threatening text messages. He texted Varnado that he was going to kill Patricelli and asked if Varnado would help him. Miller repeatedly called and texted Varnado between 2:00 a.m. and 7:00 a.m., insisting that he unlock the door to Patricelli's apartment.

That morning, Patricelli dropped her children off at her mother's house but returned home before going to work. Miller was at her apartment when she returned.

Miller stabbed Patricelli with a knife more than 30 times. Patricelli died from the wounds.

Later that morning, the police arrested Miller. Miller eventually admitted to stabbing her. He claimed he had not meant to kill her.

He was charged with murder in the first degree with enhancements for committing the crime with a deadly weapon and committing a crime of domestic violence. The State notified Miller that it would seek an exceptional sentence because the crimes were committed under aggravating circumstances. They alleged that the crime was an aggravated domestic violence offense and that Miller committed it shortly after being released from incarceration.

The case proceeded to a bifurcated jury trial. Several witnesses testified that Patricelli had told them she was afraid of Miller. The jury convicted Miller of first degree murder.

After that verdict, the trial for the two aggravating circumstances began.

The State introduced evidence that Miller had been released from incarceration just 15 days before he murdered Patricelli. The State also showed that Miller had many domestic violence convictions for abusing Patricelli and his former spouse.

The jury found that both aggravating circumstances were proved beyond a reasonable doubt. Based on those aggravating factors, the trial court imposed an exceptional sentence of 600 months. Miller appeals.

ANALYSIS

State of Mind Hearsay Exception

Miller argues that the trial court abused its discretion when it admitted Patricelli's out-of-court statements, often describing Miller's conduct, to establish Patricelli's state of mind. Specifically, Miller contends that Patricelli's state of mind was not relevant. We conclude that Miller's descriptions of Patricelli's conduct the morning of the murder made her hearsay statements relevant, but that it was error to admit the statements that described Miller's actions.

As an initial matter, the State claims that Miller failed to preserve this issue below. We disagree. Miller objected to the introduction of Patricelli's declarations on the grounds that they were hearsay at trial, and now objects on the grounds that they are irrelevant. To preserve an evidentiary issue for appeal, a party must object on the same grounds at trial. State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). But the relevance of evidence offered under the state of mind exception to the prohibition of hearsay evidence is essential to its admissibility.

In State v. Parr, the defendant objected to the admission of state of mind evidence on the grounds of hearsay. 93 Wn.2d 95, 98, 606 P.2d 263 (1980). The

court held that a person's out-of-court statements were admissible as an exception to the hearsay rule when the person's state of mind "is in question" *and* there is some need for the evidence. Parr, 93 Wn.2d at 98-99. Accordingly, unless the evidence is relevant, it is not admissible to show state of mind. We conclude that objections on the grounds of hearsay were sufficient to preserve the issue.

Hearsay, or an out-of-court statement admitted to prove the truth of the matter asserted, is generally inadmissible. ER 801(c), 802. But there is an exception to that rule for statements that establish the declarant's state of mind. ER 803(a)(3). The statements are admissible only when there is "some degree of necessity to use out-of-court, uncross-examined declarations," and "circumstantial probability of . . . trustworthiness." Parr, 93 Wn.2d at 98-99. We review evidentiary rulings for an abuse of discretion. State v. Ohlson, 162 Wn.2d 1, 7-8, 168 P.3d 1273 (2007). A trial court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds. State v. Thurlby, 184 Wn.2d 618, 624, 359 P.3d 793 (2015).

In homicide cases, an accused's defense, such as accident or self-defense, can place the decedent's state of mind at issue. Parr, 93 Wn.2d at 103. Still, even when the deceased's state of mind is relevant, "testimony which describes conduct or words of the defendant" is not admissible under this exception. Parr, 93 Wn.2d at 104.

In Parr, the victim's brother testified that the victim had told him she feared the defendant and that the defendant had threatened her. 93 Wn.2d at 98. The court determined that the victim's fear of the defendant was relevant to rebut the

4

defendant's claim that the victim had reached for a gun while they argued. Parr, 93 Wn.2d at 106. The court acknowledged that the probative value was slight but that it "was within the province of the jury to determine what inference should be drawn from [the] evidence." Parr, 93 Wn.2d at 106-07. But the court held it was error to admit the testimony about the threats the defendant made against the victim. Parr, 93 Wn.2d at 104. In State v. Athan, the defendant claimed he had consensual sex with the victim the night she died. 160 Wn.2d 354, 378-79, 158 P.3d 27 (2007). The court admitted evidence that the victim had said she was not romantically interested in the defendant to counter that claim. Athan, 160 Wn.2d at 381.

Here, Miller placed Patricelli's state of mind at issue by claiming that she had gotten into an argument with him and provoked him the morning of her death. Miller testified that when Patricelli saw him in the bedroom, she asked him "what the hell [he was] doing there."[1] When he told her he was going to take a shower and then leave, she ordered him to leave right away, and they got into an argument. He claimed that she was walking toward him when they were arguing and pushed him out of the way. While they continued to argue, she went into the bathroom, leaving Miller in the bedroom.

Patricelli's fear of Miller is relevant to their interactions that morning. It may have helped the jury evaluate how Patricelli would have responded upon unexpectedly finding Miller in her home, including whether it is likely that she would have gotten into an argument with him or initiated a physical confrontation.

---

[1] Report of Proceedings (RP) (Dec. 11, 2013) at 147.

Most of the testimony Miller argues was erroneously admitted falls within the state of mind hearsay exception. It shows Patricelli's fear of Miller but does not incorporate or describe any of Miller's conduct. Thus, the trial court did not abuse its discretion by admitting any of the following testimony.

First, a police officer testified about his interaction with Patricelli when he responded to a 911 call she had made. He described her as nervous and scared. He testified about her repeated request that he not let Miller know that she had called the police.

Second, Varnado testified that, the night before the murder, Patricelli received a text message or call from Miller about another man, named Nate. Based on the fact that Miller knew the man's name was Nate, Patricelli was concerned that Miller might be around the house. Varnado testified that Patricelli seemed scared by the possibility that Miller was nearby and started "checking all of the windows and the doors."[2] The only conduct by Miller described in this interaction was his text message to Patricelli. That text message was admitted separately. Varnado's other testimony describes Patricelli's fears.

Third, Patricelli's coworker testified that she sometimes accompanied Patricelli home and helped her check her apartment to make sure that Miller was not hiding inside. The court carefully instructed the State not to have the coworker say or imply that Patricelli had told her that Miller had hidden in her apartment before.

Finally, Patricelli's daughter also testified that her mother had told her that

---

[2] RP (Dec. 2, 2013) at 22.

she was "nervous and that she was kind of relieved" about Miller coming home.[3]

The other hearsay statements the trial court admitted describe Miller's behavior. The night before she died, Patricelli texted Miller to complain about him "stalking, harassing and threatening" her.[4] Patricelli's coworker also testified that she had seen threatening letters that Miller wrote to Patricelli, and that Patricelli had told her that the letters scared her. Patricelli's daughter testified that her mother had told her she was afraid of Miller after he climbed onto their balcony. Because these statements incorporate Miller's conduct, the trial court erred by admitting them.

The State argues that, because all of Miller's conduct was admitted under ER 404(b), the statements describing that conduct are admissible. We reject this argument for two reasons. First, the fact that Miller's conduct is admissible does not mean that all evidence establishing that conduct is admissible. ER 404(b) is not an exception to the hearsay rule. State v. Powell, 126 Wn.2d 244, 265-66, 893 P.2d 615 (1995).

Second, when the State moved in limine to introduce Miller's history of domestic violence under ER 404(b), it did not seek to use Patricelli's statements about Miller's conduct as evidence of that conduct. Similarly, the court did not rely on ER 404(b) when it overruled Miller's objections to the testimony. The parties discussed the court's ER 404(b) rulings in relation to the relevancy of Patricelli's fear and Miller's conduct, but the trial court specifically cautioned the State not to

---

[3] RP (Dec. 11, 2013) at 11. This statement includes that Miller was coming home, which could be considered his conduct. Even if it were, Patricelli's daughter testified about him coming home from her personal knowledge. RP (Dec. 11, 2013) at 10-11.
[4] RP (Dec. 9, 2013) at 3-5,

elicit any testimony about what Patricelli had told her coworker about Miller's past behavior, because it would be hearsay.

*Prejudice*

Miller argues that these errors are prejudicial and require reversal. We disagree because the errors were minor and the evidence of Miller's guilt was overwhelming. They are harmless.

Evidentiary errors require reversal only if they result in prejudice. State v. Neal, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001), as amended (July 19, 2002). Errors are prejudicial if there is a reasonable probability that they materially affected the outcome of trial. Neal, 144 Wn.2d at 611. "Improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the evidence as a whole." Neal, 144 Wn.2d at 611.

Because Miller admitted killing Patricelli, the only real issue at trial was premeditation. A person kills with premeditation if, after deliberation, he forms the intent to take another life. State v. Gentry, 125 Wn.2d 570, 597-98, 888 P.2d 1105 (1995).

Miller's text messages alone are overwhelming evidence that the killing was premeditated. Two days before the murder, he sent his mother a text message saying that he was going to kill Patricelli. The next night he sent the following messages to Varnado, who was at Patricelli's apartment:

> Cuzz when I cum in tha kill tha bitch is u gon help the hoe brah... She gon be dead ya ain't got tha worry bout hur sayin shyt to u bout y u ain't help her

> Good cuz I can say I was out wit u so they can't put me there at tha scene

8

She still talkin shyt she just don't know she bout tha die[5]

He also called Varnado dozens of times and texted him repeatedly to unlock the doors to Patricelli's apartment that evening and throughout the night.

Miller also sent Patricelli text messages before she went to bed that evening:

> Bitch I told u u was ah person that lie good luck u thank u gon have fun when ya baby get out u want get tha c him um gon show u that I can get u lol

> Watch how u gon ask me not tha hurt u just watch[6]

These messages reveal that Miller planned to kill Patricelli more than a day ahead of the murder. Even Miller's own account of the events implies some level of premeditation. He testified that after he argued with Patricelli he went to the kitchen, grabbed a knife, went back to the bathroom, and began stabbing Patricelli.

Given the strength of the premeditation evidence, it is unlikely that evidence of Miller's past threatening behavior influenced the outcome of the trial. Moreover, there was other, properly admitted evidence that, like the improperly admitted evidence, showed that Miller had threatened Patricelli and that he had climbed onto her balcony. Miller himself admitted that he had threatened Patricelli. He testified that he had threatened her in letters and text messages. The police officer who responded to Patricelli's 911 call testified that he personally witnessed Miller on the balcony that day.

Miller's argument that the errors were prejudicial relies primarily on his

---

[5] Exhibit (Ex.) 349 at 2.
[6] Ex. 349 at 2-11.

9

argument that the state of mind evidence was irrelevant. See State v. Cameron, 100 Wn.2d 520, 529-31, 674 P.2d 650 (1983). This argument is unpersuasive because Patricelli's fear of Miller was relevant.

### Cumulative Error

Miller argues that the accumulation of evidentiary errors denied him a fair trial even if no individual error did. We disagree.

"The accumulation of errors may deny the defendant a fair trial and therefore warrant reversal even where each error standing alone would not." State v. Davis, 175 Wn.2d 287, 345, 290 P.3d 43 (2012). Cumulative errors do not require reversal when there is overwhelming evidence of the defendant's guilt. In re Pers. Restraint of Cross, 180 Wn.2d 664, 691, 327 P.3d 550 (2014). The defendant "bears the burden of showing . . . that the accumulated prejudice affected the outcome of the trial." Cross, 180 Wn.2d at 690.

The only errors Miller identifies are the evidentiary errors discussed above. Miller cannot meet his burden here for the same reasons we held the errors were harmless. The evidence of Miller's guilt was overwhelming.

We affirm Miller's conviction.

### Rapid Recidivism Aggravating Factor

The jury found that Miller committed this crime shortly after his release from incarceration. Miller argues that the court erred by relying on this factor when it imposed an exceptional sentence. There was evidence that Miller committed the crime just 15 days after his release. We conclude that the jury may find that

"shortly after" can be as long as 15 days.[7]

One aggravating factor on which a judge may base an exceptional sentence is that the defendant committed "the current offense shorty after being released from incarceration." RCW 9.94A.535(3)(t). It is also described in the case law as rapid recidivism. State v. Butler, 75 Wn. App. 47, 54, 876 P.2d 481 (1994). Ordinarily, the trial court may not consider a defendant's criminal history when imposing an exceptional sentence because that history is factored into the standard range sentence. Butler, 75 Wn. App. at 54. But this aggravating factor focuses on the short time period between a defendant's release from incarceration and his commission of a new offense. Butler, 75 Wn. App. at 54. Therefore, it is distinguishable from additional punishment based on "mere criminal history." Butler, 75 Wn. App. at 54.

Like a finding of guilt, the jury must find any facts necessary to support an aggravating circumstance beyond a reasonable doubt. State v. Stubbs, 170 Wn.2d 117, 123, 240 P.3d 143 (2010). We review the jury's findings for a sufficiency of evidence. Stubbs, 170 Wn.2d at 123. Viewing all evidence in the light most favorable to the State, we must determine whether a rational trier of fact could have found the existence of the aggravating circumstance beyond a reasonable doubt. State v. Yates, 161 Wn.2d 714, 752, 168 P.3d 359 (2007).

Miller argues that a delay of over two weeks is too long to distinguish his release from incarceration from mere criminality. He relies on two cases where the court has upheld findings on this aggravating factor when the crime was

---

[7] Clerk's Papers (CP) at 159.

11

committed within hours of the defendant's release. See Butler, 75 Wn. App. at 54; State v. Cham, 165 Wn. App. 438, 450, 267 P.3d 528 (2011). Neither case establishes an outer time limit.

In State v. Combs, the court held that six months between a defendant's release and his new conviction was too long to support the aggravating factor in that case. 156 Wn. App. 502, 507, 232 P.3d 1179 (2010). Still, the court stated that "six months might constitute a short period of time" under different circumstances. Combs, 156 Wn. App. at 507.

In State v. Saltz, the defendant committed malicious mischief one month after being released from incarceration for violation of a no-contact order. 137 Wn. App. 576, 579, 585, 154 P.3d 282 (2007). The court upheld the trial court's exceptional sentence, imposed on the basis of rapid recidivism. Saltz, 137 Wn. App. at 586.

Here, Miller's correctional officer testified that Miller was released from prison on October 15, 2012. Miller killed Patricelli on the morning of October 30, 2012. A rational jury could reasonably find that 15 days was shortly after Miller's release.[8] The trial court did not err when it imposed an exceptional sentence based on this aggravating factor.

Domestic Violence Aggravating Factor

The jury also found Miller guilty of a crime of aggravated domestic violence. RCW 9.94A.535(3)(h), (i). To do so, the jury needed to believe beyond a

---

[8] As the State points out, Miller's argument is more easily understood to be that the sentencing court's reasons cannot justify an exceptional sentence. That would be a question of law that we review de novo. Saltz, 137 Wn. App. at 580. It does not change the outcome here.

reasonable doubt that the offense involved domestic violence, and "was part of an ongoing pattern of psychological or physical abuse of multiple victims manifested by multiple incidents over a prolonged period of time."[9] The court relied on this factor when it imposed an exceptional sentence.

Miller argues that, for several reasons, the trial court erred when it relied on this factor. He contends that the trial court improperly considered his criminal history, even though it was incorporated into his sentence through his offender score, that the phrase "psychological abuse" is unconstitutionally vague, and that the trial court improperly commented on the evidence. But, even if we were to vacate the jury's finding on the domestic violence aggravating factor, we would still uphold the exceptional sentence on the basis of Miller's rapid recidivism. Therefore, we do not address Miller's challenges to this factor.

We can uphold a sentence imposed for improper and proper grounds if the proper grounds independently justify the exceptional sentence. State v. Zatkovich, 113 Wn. App. 70, 78, 52 P.3d 36 (2002). As discussed above, the court properly relied on the rapid recidivism factor when imposing an exceptional sentence. The trial court explicitly concluded that "either aggravating circumstance standing alone is a substantial and compelling reason justifying the exceptional sentence."[10] The court's oral ruling likewise suggests that it found the recidivism factor as important as the aggravated domestic violence factor.

Miller argues that it is unlikely that the court would have imposed the same exceptional sentence on the basis of the rapid recidivism aggravating factor alone.

---

[9] CP at 170.
[10] CP at 213.

Miller's argument to the contrary is speculative and directly conflicts with the trial court's written order and oral ruling. We affirm the exceptional sentence on the basis of the rapid recidivism factor alone.

Affirmed.

_Trickey, ACJ_

WE CONCUR:

_Schindler, J_          _Becker, J._