# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON ,

        Appellant,

    v.

HECTOR MANUEL CRUZ-ANAYA,

        Respondent.

DIVISION ONE

No. 78006-9-I

UNPUBLISHED OPINION

FILED: September 16, 2019

DWYER, J. — Hector Cruz-Anaya challenges his convictions of indecent liberties and domestic violence felony violation of a court order following a jury trial. Because there is nothing in the record to indicate that any juror considered evidence that was not admitted at trial, the trial court properly denied Cruz-Anaya's motion for a mistrial. The prosecutor did not commit misconduct by suggesting, during cross-examination and closing argument, that the defendant tailored his testimony to align with the evidence presented. We affirm.

I

Hector Cruz-Anaya and M.H.P. lived together as a couple for several years and have two children.[1] In April 2017, they were separated and M.H.P. lived with the children in an apartment in Federal Way. Although there was a no-contact order in place prohibiting contact between Cruz-Anaya and M.H.P., they

---

[1] The State refers to M.H.P. as Cruz-Anaya's wife, but it is not clear from the record whether the couple ever married.

intermittently contacted one another to facilitate visitation between Cruz-Anaya and the children. According to M.H.P., once or twice a month, Cruz-Anaya would call her in the morning and arrange to come to her apartment and walk the children to their school bus stop.

On April 11, 2017, M.H.P. called the police to report that Cruz-Anaya sexually assaulted her earlier that morning. A police officer went to her apartment in response to the report. M.H.P. was distraught and sobbed at several points while she described what happened. She had bruising on both sides of her neck that appeared to be fresh. The police officer took photographs of M.H.P.'s apparent injuries. Based on M.H.P.'s report, the State charged Cruz-Anaya with indecent liberties and felony violation of a court order.

At the October 2017 trial, M.H.P. testified that on the morning she called the police, Cruz-Anaya came to her apartment and accompanied the children to the bus stop. A short time later, Cruz-Anaya returned to the apartment to retrieve his cigarettes. Once inside, Cruz-Anaya told M.H.P. that he needed to talk to her. Cruz-Anaya said he missed her and tried to convince her that they should live together as a family again. Cruz-Anaya then pushed M.H.P. against a wall, grabbed her, and tried to forcibly kiss her. Cruz-Anaya continued to kiss her while rubbing her breasts and pelvic area, ignoring her pleas to stop. M.H.P. lost her balance while trying to fend him off and fell to the floor. Cruz-Anaya got on top of her, took her pants off, and started to remove his clothing. When Cruz-Anaya's cell phone fell out of his pocket and landed within her reach, M.H.P.

grabbed it. After she threatened to call the police, Cruz-Anaya stopped and left the apartment. Later that morning, M.H.P. called the police.

Cruz-Anaya testified and denied seeing M.H.P. or the children on April 11, 2017. He said he was working all day at a restaurant in Auburn called Garcia's. Cruz-Anaya explained that he worked at Garcia's every Wednesday and Thursday. He said that every other day, he worked at a different restaurant in Federal Way.

Cruz-Anaya testified that he had not visited M.H.P.'s apartment since December 2016, when he delivered gifts to the children. Cruz-Anaya testified that occasionally, when he was able to borrow a vehicle, he drove the children from the apartment to school. But he insisted that he never walked the children to the school bus stop. Cruz-Anaya said he primarily saw the children on rare occasions when he was not working and could arrange for M.H.P. to bring the children to meet him at a shopping mall.

In light of Cruz-Anaya's testimony that he was working at Garcia's on April 11, 2017, and only worked at that restaurant on Wednesdays and Thursdays, the prosecutor pointed out in cross-examination that the day in question was a Tuesday. Confronted with this discrepancy, Cruz-Anaya admitted that he did not know which day of the week April 11 fell upon, but did not retract his claim that he was working at Garcia's on the day M.H.P. reported the assault.

During M.H.P.'s testimony, the State admitted a recording of her telephone call to 911 and later played the recording for the jury. Before the jury

3

retired to deliberate, the State agreed to provide a "clean" laptop computer that contained no files or documents and did not allow Internet access, so the jury could listen to the audio exhibit.

The next morning, the prosecutor informed the court that she had just learned that the jury might have been provided with the wrong computer. The court halted the jury's deliberations and upon further investigation, the parties determined that the State had inadvertently provided the jury with a "media cart" computer. Although it was password-protected, the password was written on a note affixed to the computer. There were several files saved to the desktop, including files labelled "text messages," "stun gun montage" and power point presentations for closing arguments related to other King County prosecutions. Once logged into the computer, the Internet was accessible and the computer contained other programs, such as Microsoft Outlook, Adobe Acrobat, and a video viewer. There were no files saved on the computer associated with Cruz-Anaya's case.

The court brought out the jury as a group and polled the jurors individually. The court asked each juror whether the computer had been used only to listen to the audio exhibit and whether the computer was used to access any other documents or programs or to access the Internet. Each juror confirmed that he or she used the computer only to listen to the audio exhibit and for no other purpose.

Despite these assurances, the defense moved for a mistrial. Defense counsel acknowledged that there was no reason to disbelieve the jurors'

4

statements. Yet, the defense argued that access to a computer during deliberations that contained information about other criminal cases created an "appearance of impropriety." Counsel also argued that even if none of the jurors opened any documents or files, the files that were visible on the desktop would have created a "subconscious belief" that there was additional damaging evidence against Cruz-Anaya that the jurors were not permitted to consider. The court denied the motion.

The jury continued deliberations and convicted Cruz-Anaya as charged. The court imposed a standard range indeterminate sentence. He appeals.

II

Cruz-Anaya argues that his convictions must be reversed because the jury's "access" to prejudicial extrinsic evidence on the laptop computer amounted to a serious trial irregularity and deprived him of a fair trial.

A jury's verdict must be based on evidence admitted at trial and the jury's consideration of extrinsic evidence may be a ground for a new trial. Turner v. Louisiana, 379 U.S. 466, 472, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965); State v. Gobin, 73 Wn.2d 206, 211-12, 437 P.2d 389 (1968). Jury consideration of evidence outside of the evidence admitted at trial is improper because it is not subject to objection, cross-examination, explanation, or rebuttal. See Halverson v. Anderson, 82 Wn.2d 746, 752, 513 P.2d 827 (1973). Where the defendant suffers prejudice, a juror's consideration of extrinsic evidence entitles a defendant to a new trial. State v. Boling, 131 Wn. App. 329, 332, 127 P.3d 740 (2006). We will affirm a trial court's order granting or denying a motion for a new

trial absent a manifest abuse of discretion. State v. Balisok, 123 Wn.2d 114, 117, 866 P.2d 631 (1994); State v. Marks, 71 Wn.2d 295, 302, 427 P.2d 1008 (1967).

Cruz-Anaya argues that the State failed to meet its burden to establish that he was not prejudiced by extrinsic evidence contained on the laptop. He relies on the dissenting opinion in State v. Arndt, 5 Wn. App. 2d 341, 353-54, 426 P.3d 804 (2018) (Maxa, C.J., dissenting), review denied, 192 Wn.2d 1013 (2019), to argue that any uncertainty about the prejudicial effect of the extrinsic information must be resolved in the defendant's favor. But we need not evaluate prejudice because there is nothing in the record to suggest that any juror used the computer to access extraneous information or considered any evidence that was not properly before it.

For instance, in Arndt, the defendant was charged with first degree murder and the undisputed evidence established that a juror considered extrinsic information by independently researching the term "premeditation." Arndt, 5 Wn. App. 2d at 344; see also State v. Pete, 152 Wn.2d 546, 550-51, 98 P.3d 803 (2004) (unadmitted documents, including a police report, were inadvertently provided to the jury during deliberations); State v. Boggs, 33 Wn.2d 921, 925-26, 207 P.2d 743 (1949) (physical exhibits, bullet and rifle, not admitted at trial were sent to the jury room), overruled on other grounds by State v. Parr, 93 Wn.2d 95, 606 P.2d 263 (1980). Here, on the other hand, the computer provided to the jury contained no information that pertained to Cruz-Anaya's case. More importantly, the evidence in the record established that none of the jurors used the laptop

6

computer to view or access any extrinsic information.[2] The trial court did not abuse its discretion by denying the motion for a mistrial.

### III

Cruz-Anaya next argues that the prosecutor engaged in misconduct when, in closing argument, she called attention to the fact that he had the benefit of hearing other witnesses' accounts before he testified and thereby infringed on his constitutional trial rights, including the right to be present at trial.

Consistent with his testimony on direct examination, Cruz-Anaya confirmed on cross-examination that he specifically remembered working at Garcia's restaurant on April 11, 2017. In response, the prosecutor pointed out that, before he testified, Cruz-Anaya had the opportunity to review the documents, photographs, and "everything in this case" and was able to hear M.H.P.'s testimony, thus suggesting that Cruz-Anaya tailored his testimony to conform to the evidence presented. On re-cross, when the prosecutor asked Cruz-Anaya whether he was aware that April 11, 2017 was a Tuesday, Cruz-Anaya admitted that he did not know which day of the week it was, but did not change his position about where he had been on that day.

In rebuttal closing argument, the prosecutor responded to defense counsel's characterization of the evidence as a "swearing contest" between

---

[2] As he argued below, Cruz-Anaya contends that even assuming none of the jurors manipulated or opened files, the items visible on the desktop would have led the jury to believe that incriminating evidence was withheld because one of the files was labeled "text messages" and the absence of text messages to corroborate M.H.P.'s testimony was an issue he raised. But M.H.P. did not testify that Cruz-Anaya sent her a text message on the morning of the assault. Nor did she testify, in general, that she communicated with Cruz-Anaya by text message. There is simply no basis to conclude that, upon seeing the names of files on the desktop, the jury would have made a speculative assumption about the existence of additional damaging evidence.

equally credible witnesses. The prosecutor argued that M.H.P. was significantly more credible than the defendant, in part, because of Cruz-Anaya's opportunity to hear the evidence against him before he testified. The prosecutor pointed out that when the defendant testified "definitively" that he was working at Garcia's restaurant on the date of the alleged assault, he did so after having heard the other witnesses' accounts. The prosecutor also reminded the jury that it was only after she informed Cruz-Anaya that the date in question was a Tuesday that "all of a sudden" he became less certain of his ability to remember because it was "so long ago." Cruz-Anaya did not object to the prosecutor's line of questioning on cross-examination or to this argument.

Under both the United States and the Washington Constitutions, a defendant has the right to "appear and defend in person," to testify on his own behalf, and to confront the witnesses against him.[3] CONST. art. I, § 22; U.S. CONST. amend. VI. In <u>Portuondo v. Agard</u>, 529 U.S. 61, 73, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000), the United States Supreme Court held that a testifying defendant should be treated as other witnesses are treated, observing that comments on a defendant's opportunity to tailor his testimony are appropriate and "sometimes essential."

---

[3] Article I, section 22 of the Washington Constitution provides, in relevant part: "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face." The Sixth Amendment of the United States Constitution provides, in relevant part, that the accused "shall enjoy the right . . . to be confronted with the witnesses against him." The confrontation clause includes the right to be present at trial. <u>Illinois v. Allen</u>, 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970).

A decade later, in State v. Martin, 171 Wn.2d 521, 533-36, 252 P.3d 872 (2011), our Supreme Court, analyzing tailoring arguments under our state constitution, concluded that the Washington Constitution provides greater protection than does the Sixth Amendment, and adopted the standard articulated by Justice Ginsburg in her Portuondo dissent. Justice Ginsburg agreed with the majority in Portuondo that when a defendant takes the stand the State may fairly use cross-examination to explore an accusation of tailoring because it is important to the truth-seeking function of a trial that the credibility of the defendant be tested in the same manner as any other witness. Portuondo, 529 U.S. at 79 (Ginsburg, J., dissenting). But Justice Ginsburg opined that tailoring arguments should be disallowed "where there is no particular reason to believe that tailoring has occurred and where the defendant has no opportunity to rebut the accusation." Portuondo, 529 U.S. at 78 (Ginsburg, J., dissenting). Applying this rule, the court in Martin held that a prosecutor is not prohibited "from indicating, via questioning, that a defendant has tailored his or her testimony to align with witness statements, police reports, and testimony from other witnesses at trial." Martin, 171 Wn.2d at 533.

Cruz-Anaya claims that the prosecutor's argument here was impermissible under Martin and incompatible with our state's constitutional protections because, unlike the prosecutor in Martin, the prosecutor herein did not directly cross-examine him about the possibility of tailoring and instead, made only a generic argument that he tailored his testimony. We disagree. As noted, the prosecutor here did, indeed, cross-examine Cruz-Anaya on the issue of

9

tailoring.[4] Cruz-Anaya had an opportunity to meaningfully respond to the allegation. Moreover, even if this were not the case, our courts have rejected the claim that a tailoring argument is necessarily prohibited if not preceded by cross-examination on the issue. State v. Berube, 171 Wn. App. 103, 116-17, 286 P.3d 402 (2012); State v. Teas, No. 51098-7-II, slip op. at 11-12 (Wash. Ct. App. August 20, 2019), http://www.courts.wa.gov/opinions/pdf/D2%2051098-7-II%20Published%20Opinion.pdf.

In Berube, in which the prosecutor did not raise the issue of tailoring on cross-examination, we concluded that when an accusation of tailoring is based on the defendant's testimony, "the argument is a logical attack on the defendant's credibility and does not burden the right to attend or testify." Berube, 171 Wn. App. at 117. The prosecutor's argument in this case was based on Cruz-Anaya's testimony. On both direct and cross-examination, Cruz-Anaya implausibly claimed to independently remember, for no particular reason, exactly where he was on the date of the assault. Then, when the prosecutor made him aware of a fact that did not align with his narrative, he asserted that the date was too far in the past to remember details. Properly viewed in the context of the entire argument, the prosecutor's allegation of tailoring was a logical attack on Cruz-Anaya's credibility and thus did not constitute misconduct.

---

[4] We reject Cruz-Anaya's apparent assertion that the prosecutor's suggestion of tailoring on cross-examination was insufficiently explicit.

Affirmed.

WE CONCUR: